## DURKE v. STATE OF INDIANA.

[No. 25,241. Filed November 18, 1932. Rehearing denied January 31, 1933.]

*Clarence E. Benadum* and *Edward R. Templer,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Harry L. Gause,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant and two others, in the court below, were charged by affidavit with uniting and combining with each other for the purpose of committing a felony. Sec. 2882 Burns 1926. The burglary alleged is defined by §2447 Burns 1926. Appellant had a separate trial before a jury which found him guilty and his age 25 years. His motion for a new trial was over-

ruled, and judgment followed, fixing his fine at $100 and imprisonment in the Indiana Reformatory for a period of not less than two nor more than fourteen years. Application for bail granted, bond tendered and approved by the trial court.

The only error assigned and relied on by appellant is the action of the court in overruling his motion for a new trial. The causes in this motion and not waived are: that the court erred in admitting evidence; in refusing to admit certain proffered evidence; and that the verdict is contrary to law.

A brief statement taken from the evidence in this case before the jury may serve to a better understanding of the questions here presented and our rulings thereon. One of the persons included in the affidavit with appellant testified that Durke, another and himself met at a cigar store in Muncie and decided they wanted some grain alcohol. Some one of the three said that it could be had at Campbell's Drug Store. Later in the evening the three met, and at about one o'clock the next morning they went to the drug store and shoved the front door in. All three participated in this act. Witness remained on the outside and the other two entered the store, and after some fifteen or twenty minutes came out saying they could not find the alcohol. They again entered the store and came out with their pockets full of fountain pens and "money orders." The witness and appellant, between two and three o'clock the same morning, hid the booty so taken from the store under the Jackson school steps. Later, the fountain pens and money orders were repossessed and divided among the three. About four o'clock the same morning the three left Muncie on an interurban car for Indianapolis where they disposed of some of the fountain pens and cashed one money order for $45. They then went to Louisville, Ky., where two money

orders were cashed, one by appellant for $15. From Louisville they went to Cincinnati, Dayton, and Detroit, where two more money orders amounting to $100 were cashed. Witness was arrested while in a certain clothing store at Detroit. Appellant was in the store at the time but left and was not arrested until he returned to Muncie. Witness was brought back to Muncie and placed in jail along with appellant where he says they had several conversations concerning the robbery. Fountain pens were introduced in evidence. Witness stated they looked like a part of the loot taken from Campbell's Drug Store. One of the pens in evidence was taken from appellant. Some of the less important items of witness' testimony were corroborated by other evidence.

Mr. Campbell, owner of the drug store, described the condition in which he found the door the morning following the robbery; that the glass in the fountain pen case had been crushed and many of the pens and about seventeen money orders had been taken; that the fountain pens exhibited at the trial were of the same make and character of the ones they carried in stock. A Mr. Everson, chief detective of the Muncie police force, testified that he was at the police station when appellant was brought there by the officers. He asked him (appellant) where he had been and who was with him, and he said he was with Tex Hiatt and Spud Wolfe. (These two persons are included in the affidavit with appellant.) He said they went to Indianapolis, and from Indianapolis to Louisville, Louisville to Cincinnati, and Cincinnati to Detroit. He then testified that a few days before that he was present when appellant was being tried for burglary. He identified a lady's fountain pen which he said had been taken from appellant, but did not know where appellant obtained it. A Mr. Cunningham testified that he was a police officer in the

detective department at Muncie; that he had known appellant three or four years; arrested him on this charge; had a conversation with him in which he said he would prove that Wolfe and Hiatt did the job; that he didn't know anything about it; that he was not in Muncie at the time of the robbery but later was in Detroit with Hiatt and Wolfe. Witness, a few days before, was in the courtroom when appellant was being tried for burglarizing Campbell's Drug Store, but was not called as a witness. That case was dismissed.

Appellant testified in his own behalf in which he denied in detail all of Wolfe's testimony in any manner connecting him with the Campbell Drug Store burglary. Denied the conversation detailed by each of the detectives. He claimed the fountain pen which the officers took from him was a present from his aunt, and that he was never in the drug store. On cross-examination he was asked about getting $120 "hot gold" from one Robert Koker, at whose request he exchanged the same for currency at the Delaware Bank in Muncie, and for which he received $10. He admitted getting the gold and $10 with which to buy a pair of shoes, but denied any knowledge of its having been stolen or taken from a bank at Hamilton, Ohio. He admitted having been convicted in the Federal Court for burglarizing a box car and sentenced to prison for three years at Atlanta, Ga. He escaped from prison and was a fugitive for about eight months when he was apprehended and returned to prison. He denied that he and Bill Campbell stole an automobile in Muncie. He admitted testifying before the grand jury that indicted Bill Campbell. He admitted having a conversation with Wolfe at the Yellow Cab office in Muncie about four o'clock in the morning of the burglary. After this conversation he went to Eckinberg's restaurant and from there home.

The next day he took a freight train for Richmond and Hamilton. Was in Hamilton eight or nine days, returned to Richmond and then to Muncie.

Several police officers were called as witnesses on behalf of the state, and each one testified that appellant's reputation for truth and veracity was bad.

Looking to the causes for a new trial, and first to the claimed erroneous admission of evidence, it appears that on cross-examination appellant was asked, in substance, whether or not, about a year before, he and Bill Campbell had stolen an automobile in the city of Muncie, to which he answered "We did not." Immediately following this question and answer, he was asked this question: "You testified before the grand jury in regard to that case?" Over his objection he answered "Yes." He also objected to the question on cross-examination with reference to his having received $120 in gold, which he was told was "hot gold," for the purpose of having it changed into currency in the Delaware Bank, for which he received $10. His objection was overruled and he answered "Yes and no," which answer he later explained, that he did not know it was "hot gold" and that he received $10 with which to buy a pair of shoes.

As to the first question claimed to be erroneous, it is insisted that the state was bound by the answer given to the previous question. The mere fact that he testified before the grand jury, which was investigating the question of a stolen automobile, cannot be considered as tending to an inference that appellant was in any way connected with the larceny, if there was one, or as an inference that his denial of taking an automobile was not correct. Hence, no harm resulted from this question and answer.

The question with reference to exchanging the gold was admissible only upon the theory of affecting appel-

lant's credibility as a witness, which was a matter alone for the jury. He denied any knowledge of its being "hot gold." His knowledge or acquaintance, or the standing of the person in the community from whom he received the gold, or that it had been stolen, was given no further attention by either the state or the defense. The receiving of stolen property of the value of $25 or more, knowing it to have been stolen, is defined by our statute as a felony. Sec. 2465 Burns 1926. If from the question and answer the inference may be drawn that he received the stolen property, the objection to the question was not urged upon that ground, but if it had been, the ruling of the court would not be reversible error.

It is next insisted that the court erred in permitting the witness Wolfe to testify that money orders were cashed at Louisville. There was objection to this question on the ground that the affidavit charged a "confederation to commit a felony within this state, and of course any other evidence in the case, of that nature, would only be collateral evidence." This objection was properly overruled for the reason that state lines or state boundaries can have no influential effect either for or against one disposing of burglariously obtained property. The testimony of the witness Wolfe, although denied by appellant, was to the effect that the three, which included appellant, took part in disposing of the fountain pens and money orders at Indianapolis and at Louisville, Ky. Under this evidence they were still acting in concert and from which an inference might be drawn tending to support the issues submitted to the jury.

Lastly, it is insisted that the verdict of the jury is contrary to law. In support of this cause for a new trial he makes the point that the defendant was charged by separate affidavits with burglary and with entering

into what is commonly called a "conspiracy to commit a felony." He insists that both offenses grew out of the same transaction, in which case the state may select the statute under which it will proceed, and a conviction or acquittal of one will bar the other. Oral evidence was admitted without objection to the effect that on Monday of the week of the trial of this case appellant was put upon trial on a charge of burglarizing Campbell's Drug Store. On failure to identify appellant as one of the parties, or as the party committing this burglary, the case was dismissed. Upon this evidence appellant claims former jeopardy and a bar to this action.

Our State Constitution provides that: "No person shall be put in jeopardy twice for the same offense." Art. 1, §14, Constitution of Indiana. The question thus fairly presented is: Was appellant placed twice in jeopardy by the second prosecution? While our constitution prohibits jeopardy twice for the same offense, yet it does not necessarily follow that but one offense may result from the same transaction.

The above constitutional provision inhibits the splitting up of a single offense into divisions, and this court has consistently held that offenses of the same grade as robbery and larceny, or where they are similar in character as assault and battery or assault and battery with intent to commit a felony, in either of these classes of cases a judgment rendered on the higher offense would bar the lesser. The principle thus suggested appellant would have us adopt in the present case, but the rule seems to be well settled that where two several and distinct offenses grow out of the same transaction, a judgment rendered on one will not bar a prosecution on the other, and this rule governs this case.

In *Foran* v. *State* (1924), 195 Ind. 55, 60, 144 N. E. 529, 530, it is said: "The courts of this state however

have leaned more strongly to the 'identity of offense' test, which is that the second charge must be for the same identical act and crime as that charged by the first affidavit or indictment upon which defendant had been placed in jeopardy. This test is in harmony with the constitutional guarantee. . . . This test, as usually stated in the decisions of this court, is whether if what is set out in the second indictment had been proved under the first, there could have been a conviction, *State* v. *Reed* (1907), 168 Ind. 588, 591, 81 N. E. 571, or stated another way: 'Would the same evidence be necessary to secure a conviction in the pending, as in the former prosecution,' *Smith* v. *State* (1882), 85 Ind. 553, 557." See, also, *Mood* v. *State* (1924), 194 Ind. 357, 142 N. E. 641; *State* v. *Gapen* (1897), 17 Ind. App. 524, 45 N. E. 678; *Joslyn* v. *State* (1891), 128 Ind. 160, 163, 27 N. E. 492; *Thomas* v. *City of Indianapolis* (1924), 195 Ind. 440, 452, 145 N. E. 550.

Applying these tests to the facts in the instant case, it must be said that the essential proof in a prosecution for burglary would not be sufficient to convict one charged with the crime known as "conspiracy to commit a felony"—burglary. In the latter case the evidence must show a uniting or confederation of two or more persons to commit the burglary. In order to convict of the offense in the present case, it would not be necessary to prove actual participation in the felony, but in order to convict one charged with burglary, there must be proof connecting the party with the overt act. We must therefore conclude that the prosecution of appellant for burglarizing the Campbell Drug Store, regardless of its outcome, would not protect him against a prosecution for the offense charged in the instant case.

Judgment affirmed.