JIMMIE LEE ELMORE, ANDREA LAMB, JOHNNY MONTGOMERY *v.*
STATE OF INDIANA

[No. 2-876A306. Filed May 1, 1978. Rehearing denied June 7, 1978.]

*Bruce N. Bagni, Bagni, Giddings & Sherman*, of Indianapolis, for appellants.

*Theodore L. Sendak*, Attorney General of Indiana, *David L. Steiner*, Deputy Attorney General, for appellee.

WHITE, J. — Elmore, Lamb, and Montgomery were tried by the court and convicted of Theft of property valued over $100.00 (Count I) and Conspiracy to Commit Theft (Count II). Each was fined $100.00 and sentenced to one to ten years imprisonment for the theft and two to fourteen years for the conspiracy. On appeal they assign as error: (1) the court's failure to approve their plea bargain and (2) insufficiency of the evidence to sustain their convictions. We find no cause for reversal in either assignment, but *sua sponte* we hold that the lesser offense of theft is merged into the greater offense of conspriacy and therefore remand the cause of vacation of the theft sentence.

## I.

When the case was called for trial the deputy prosecutor and the attorneys for the defendants informed the court that all defendants and the State had entered into a plea bargain whereby the defendants would plead guilty to Count I, theft, and the State would dismiss Count II, conspiracy, and would recommend that Montgomery and Lamb be sentenced under the Minor's Statute.[1] There was to be no sentencing

---

1. Ind. Ann. Stat. § 35-8-3-1 (Burns Code Ed., 1975):

"Whenever any person under the full age of twenty-one [21] years who has not

recommendation for Elmore who was not a minor. No one mentioned whether the State's part of the bargain (i.e., the prosecutor's agreement to dismiss Count II and to recommend sentencing under the Minor's Statute) had been reduced to writing as required by Ind. Ann. Stat. §§ 35-5-6-1(b) and 35-5-6-2(a) (Burns Code Ed., 1977 Supp.)[2] nor is there anything in the record to indicate that it was written. We must therefore assume that it was wholly oral.

After asking questions of counsel by which he confirmed his understanding of the terms of the plea bargain, the court asked the three defendants under oath whether they understood the theft charge. Lamb and Montgomery said they did but Elmore said he did not. The judge made a brief attempt to explain it to him and then announced that there was no way he could do so and "that under the circumstances we better go to trial."

Whereupon, without further comment from anyone, the trial began. It ended in a finding that all defendants were guilty on both counts, for which they received statutorily authorized sentences greater than they would have received had their plea bargain been approved.

---

theretofore been convicted of a felony shall have been convicted of any crime the punishment for which is imprisonment in the Indiana Reformatory or the Indiana Woman's Prison, such person may be sentenced to said reformatory or woman's prison for a term of not less than one [1] year nor more than ten [10] years, or the court, in its discretion, may sentence said person to the Indiana State Farm, or to the Indiana Woman's Prison, for any determinate period not exceeding one [1] year: Provided, That nothing herein contained shall apply to any person convicted of an offense punishable by life imprisonment or death."

2.   Section 35-5-6-1 provides in pertinent part:

"As used in this chapter:

* * *

"(b) 'Recommendation' means a proposal by the prosecutor to a court that: (1) a charge dismissed, or (2) a defendant, if he pleads guilty to a charge, receive less than the maximum sentence prescribed by law."

Section 35-5-6-2 provides in pertinent part:

"(a) No recommendation may be made by the prosecutor to a court on a felony charge except (1) in writing, and (2) before the defendant enters a plea of guilty. The recommendation shall be shown as filed, and, if its contents indicate that the prosecutor anticipates that the defendant intends to enter a plea of guilty to a felony charge, the court shall order the presentence report required by IC 1971, 35-4.1-4-9 and may hear evidence on the recommendation."

Although this appeal is taken in the names of all three defendants, error with respect to the aborted plea bargain is claimed on behalf of only two: Lamb and Montgomery. They contend that the court erred in rejecting their guilty pleas solely on the ground that Elmore apparently misunderstood the nature of the theft charge. They cite but one case, *Harshman v. State* (1953), 232 Ind. 618, 115 N.E.2d 501, which they say holds that "[a] defendant has the prerogative to voluntarily and intelligently plead guilty in any criminal case". What that case actually holds is that:

> "Under our practice an accused may enter a plea of guilty in any case, and thereby waive his constitutional right to trial by jury. But to be valid and binding upon the accused, such a plea must be made by the accused intelligently, advisedly and understandingly, with full knowledge of his rights, and with the considered approval of the judge before whom he stands charged." (232 Ind. at 620.)

In substance, the appellants concede as much by quoting Ind. Ann. Stat. § 35-4.1-1-3 (Burns, 1975), which provides that a court shall not accept a guilty plea from a defendant without first determining that he understands the nature of the charge and informing him what he is admitting, what rights he is waiving, what sentence he may receive, and that the court is not bound by any agreement he may have with the prosecutor.[3] But without citing authority, appellants also contend that once the court so informs an accused and is satisfied with his responses, he should accept the plea. They further contend that the judge should

---

3. Other sections of Chapter 35-4.1-1-1 also provide the procedures for arraignment and plea as well as providing for withdrawal of guilty pleas. None of those statutes expressly requires the court to accept a guilty plea. It is also to be noted that § 35-4.1-1-3 was enacted in 1973, while the plea bargaining statute, chapter 35-5-6, quoted in note 2, became effective in 1975 and repeals by implication any provisions of the earlier statute which are inconsistent with the latter, e.g., if a plea bargain recommendation has been put into writing and accepted by the court pursuant to § 35-5-6-2 "it shall be bound by its terms" and thus it should not inform the defendant pursuant to § 35-4.1-1-3(e) "that if it accepts the guilty plea the court is not bound by defendant's agreement with the prosecutor." Obviously, however, all pertinent statutes must be read together and interpreted consistently with case law. Thus § 35-5-6-2(b) does not mean that the court's acceptance of the prosecutor's written recommendations binds him to accept defendant's guilty plea. The court must still satisfy himself that there is a factual basis for the defendant's offer to plead guilty and that it is freely, knowingly, and voluntarily offered and must cause the proceeding at which that determination is made to be recorded and transcribed pursuant to Criminal Rule 10.

have made greater effort to explain the charge to Elmore, and failing that, should have accepted Lamb and Montgomery's pleas after completing his dialogue with them. In effect they are contending that the trial court had a duty to make a reasonable effort to effectuate their oral plea bargain and that he failed to do so.

Whatever merits their argument may have, it fails to mention or to reckon with the requirements of Indiana's plea bargaining statutes, Ind. Ann. Stat. §§ 35-5-6-1, 2 & 3 (Burns 1977 Supp.), which became effective July 29, 1975, months before appellants' plea bargain was rejected.

§ 35-5-6-2 has been interpreted in but two cases: *Gross v. State* (1975), 167 Ind.App. 318, 338 N.E.2d 663, and *Henry v. State* (1977), 175 Ind. App. 212, 370 N.E.2d 972. In *Gross* the statute did not apply because defendant's guilty plea was accepted before it became effective. However, a *Gross* footnote observes that the statute "now requires the trial court to advise the defendant if he will accept the prosecutor's sentencing recommendation prior to the acceptance of the guilty plea." Judge Staton further opined: "Hopefully, strict adherence to the requirements of IC 1971, 35-5-6-2 by trial courts will considerably reduce the number of post conviction relief petitions and appeals asserting the right to withdrawal of petitioner's guilty plea because of promises regarding sentencing." In *Henry*, on the other hand, appellant offered her guilty plea after the statute became effective. The offer was prompted by the prosecutor's promise to recommend sentencing under the Minor's Statute, but he filed no written recommendation. The court accepted the plea but did not follow the recommendation. The defendant brought a post-conviction proceeding to set the plea aside. Judge Staton, speaking for the majority, said:

"We agree with the State's contention that the trial court was not bound to follow the procedure outlined in 35-5-6-2 because no written recommendation from the prosecutor was ever filed with it. As no written recommendation was filed, either before or after Henry entered her guilty plea, there was nothing for the court to act upon. However, because Henry's plea was induced by an alleged recommendation from the prosecutor that she be sentenced pursuant to the Minor's Sentencing Act, she should have been advised that no such recommendation was before the court and could not be received by the court after entry of her plea." (370 N.E.2d at 975.)

Henry's guilty plea was therefore ordered set aside as having been involuntarily made because the trial court had failed to tell her that the prosecutor had made no recommendation.

Since both *Gross, supra,* and *Henry, supra,* unlike the case now before us, were concerned with plea bargained guilty pleas which had been accepted, neither expressly answers the question now before us: Whether, under the plea bargain statute, a trial court has any duty to consider or to assist in effectuating an unwritten plea bargain. But *Henry* does tell us that a prosecutor's unwritten proposal is no proposal at all. With that proposition we are in full agreement. The language of § 35-5-6-2(a) ("No recommendation may be made by the prosecutor to a court . . . except in writing . . . .") permits of no other interpretation.

Whatever may have been the judge's reason for abandoning his interrogation of the appellants, which he had begun in apparent anticipation of accepting their guilty pleas, that abandonment gives them no cause for complaint. They, through their attorneys, had assisted the prosecutor in presenting him with an unwritten plea bargain, a nullity which imposed upon him no duty. He paid it more heed than it merited. We are not suggesting, however, that had the plea bargain been presented in writing, as required by the statute, that it would not have been entitled to serious consideration from the trial judge. We believe a tendered guilty plea properly presented as a part of a valid plea bargain is entitled to serious consideration by reason of both the defendant's interest in fair treatment and the public's interest in expeditious disposition of criminal cases. Which is not to say, of course, that the avoidance of trials and the conservation of judicial time should be the court's paramount consideration in deciding whether to approve a plea bargain. Such a simplistic approach would almost automatically result in approval. With the aid of the presentence report and the evidence which § 35-5-6-2(a) contemplates the court shall have before it prior to determining whether to accept the bargained guilty plea, the court must certainly consider whether the recommended sentence is commensurate with the gravity of the offense, the defendant's degree of culpability and the apparent availability of clear and convincing evidence of his guilt. *Ballard v. State* (1974), 262 Ind. 482, 502, 318 N.E.2d 798, 810. But whether the decision is to approve or to

disapprove the bargain, the decision should be "for good cause". *United States v. Martinez* (CA 5, 1973), 486 F.2d 15, 20-21, and the federal authorities it cites.

## II.

Disposition of the contention that the evidence is insufficient to sustain the conviction requires a detailed review of the evidence. The State's evidence consists of (1) the testimony of a Mr. Starkey who identified exhibit one as a CB radio which had been removed, without his knowledge or consent, from his parked automobile; (2) the testimony of police officer Bowman, who on February 12, 1976, witnessed what he believed was an attempt by the three defendants to sell two CB radios to the operator of a filling station at 38th Street and Sherman Drive, Indianapolis; and (3) the testimony of police officer Shorter who followed the three defendants from the station to another service station at 34th Street and Keystone Avenue, Indianapolis, where he stopped their two cars in which the three were riding, arrested the three and recovered Starkey's radio from the car driven by Elmore. (Lamb and Montgomery were in Lamb's Oldsmobile which had either preceded or followed Elmore's Cadillac from the first station to the second).

The defendants' evidence consisted solely of their own testimony. Lamb and Elmore testified that on the morning of their arrest Lamb was having trouble starting his Oldsmobile. When they got it started Lamb drove it to the station at 38th and Sherman to have it fixed. Elmore followed in his Cadillac. The mechanic at the station told Lamb he needed a new starter so Elmore drove Lamb in Elmore's Cadillac to a parts store to buy one. Lamb went into the store while Elmore stayed in his Cadillac. After a while, Elmore started to go into the store. A man stopped him outside and offered to sell him two CB radios. Elmore brought them both for $30.00. One CB came from the glove compartment of what Elmore assumed was the seller's car and the other from underneath the dash, which made Elmore think "they wasn't stolen because it was hooked up in his car." Elmore put them on the floor in the back seat of his Cadillac and told Lamb about them on their way back to the station but before they stopped at Lamb's mother's house where they picked up Montgomery. Montgomery testified he went with them just for the ride and that he saw the radios on the floor while he was riding

in the back seat to the station, but he had no conversation about them with either Elmore or Lamb, and never knew they were stolen. All three denied having any conversation with anyone at the station about the radios and denied hearing any conversation about them and denied showing them to anyone or seeing anyone looking at them. Lamb admitted seeing one of the police officers at the station. Montgomery and Elmore were not asked if they did.

The facts admitted by the defendants are insufficient to prove, *prima facie*, that any of the three actually stole Starkey's radio. Elmore's testimony was sufficient to make a case against him for receiving stolen property as defined by Ind. Ann. Stat. § 35-17-5-3(1)(f) and (2)(a) (Burns Code Ed., 1975). And as we read *Green v. State* (1972), 258 Ind. 481, 484, 282 N.E.2d 548, in relation to *Coates v. State* (1967), 249 Ind. 357, 229 N.E.2d 640, and *Lawrence v. State* (1968), 250 Ind. 161, 235 N.E.2d 198, Elmore's testimony is also *prima facie* proof, as to him, of the general charge of obtaining and exerting unauthorized control, as theft is defined generally in Ind. Ann. Stat. § 35-17-5-3(1)(a) and (2)(a) (Burns Code Ed., 1975), and as charged in Count I.

In *Green v. State, supra*, defendant was charged in the general theft language of Ind. Ann. Stat. § 35-17-5-3(1)(a) and (2)(a) with having obtained and exerted unauthorized control over property of her employer. The evidence was that she obtained control by raising the amount of her payroll check, which is theft by deception under § 35-17-5-3(1)(b) and (2)(a). In holding there was no fatal variance the *Green* opinion said:

"The first part of the statute in question[4] does not limit the means or method by which unauthorized control may be obtained . . . . In our opinion, the prosecuting attorney has the option of determining whether or not he desires to make the charge specific under some specified section of the statute, or to make the charge general in nature when the evidence is not certain as to the methods used to gain control . . . .

4. "The first part of the statute in question" is Ind. Ann. Stat. § 35-17-5-3(1)(a) and (2)(a) (Burns Code Ed., 1975) which reads: "A person commits theft when he (1) knowingly: (a) obtains or exerts unauthorized control over property of the owner . . . and (2) . . . (a) intends to deprive the owner of the use or benefit of the property . . . ."

It is under this part of the statute that the theft charge in this case is laid.

"We do not have here a narrow charge in which the verdict was too broad as in the case of *Lawrence v. State* (1968), 250 Ind. 161, 235 N.E.2d 198. In that case the appellant was charged narrowly with obtaining property by deception. The verdict . . . found the appellant guilty of unlawfully obtaining unauthorized control of property of the owner [and was held to be inconsistent with the charge and therefore contrary to law]." (282 N.E.2d at 550.)

*Green* likewise distinguished *Coates v. State* (1968), 249 Ind. 357, 229 N.E.2d 640, in which the charge was receiving stolen property (theft as defined in § 35-17-5-3[1][f]) while the evidence showed the accused stole the property himself (theft as generally defined in § 35-17-5-3[1][a]).

*Green* concluded: "The fact that there are other included offenses which are more narrowly defined does not prohibit the state from prosecuting under a broader provision of the statute, such as the one in this case which covers any 'unauthorized control of the property of the owner.'" (282 N.E.2d at 550.)

Applying that reasoning, we find the combined testimony of Elmore and Lamb sufficient to make a *prima facie* case against Elmore, a case of theft by receiving stolen property. But the combined testimony of the three is insufficient to make a case of theft against Montgomery and probably insufficient as to Lamb. It is therefore necessary to examine in greater detail the police officers' testimony relative to Lamb and Montgomery's connection with the case.

Sergeant Bowman testified that during the time he was in the station at 38th and Sherman he saw the three defendants and a Mr. Dale (described as "an owner of the station") having a conversation and working on the front of an Oldsmobile, the only car in the station when Bowman entered. The four then went to a black Cadillac which had pulled into the bay on the north side. "Mr. Elmore, then, went to the door of the Cadillac on the passenger side, along with Mr. Lamb and Mr. Montgomery and Dale. They opened the passenger door. Mr. Elmore got in the car and Mr. Dale stepped in. The other two stood on the side of the car, looking in, and they were looking at something in the back seat of the car." The four went back to the Oldsmobile. Sgt. Bowman then looked into the Cadillac and saw two CB radios on the floor behind the driver's seat. He could not identify Starkey's CB as either of the two,

but one looked like it. He said "there was conversation taking place during most of the time in the station, and I heard Mr. Elmore offer to sell the radios . . . and then they went back to the Oldsmobile." Dale walked to the front of the station and conversed with Bowman, then went back and asked Elmore "if he could get rid of the CBs through the station there, or if they came from somewhere farther away." An objection at this point was sustained "as to hearsay" and a further objection was sustained because, in the court's words, "The corpus delicti has not been established".

Sgt. Bowman was then excused and Sgt. Shorter was called. Shorter testified that he was not in the station at 38th and Sherman but was outside in the police van. He saw the defendants go into the station and come out in the Cadillac and the Oldsmobile. He said "we" followed them south on Sherman Drive and West on 34th Street and finally caught up with them and stopped them at 34th and Keystone. He then identified state's exhibit one (which Starkey had identified as his stolen CB radio) as the CB radio he had taken from the back seat of the black Cadillac he had followed from 38th and Sherman to 34th and Keystone on February 12, 1976. Elmore was operating the Cadillac and neither Montgomery or Lamb was in it.

Sgt. Bowman was then recalled to the stand. He testified that in the conversation in the presence of the three defendants, Mr. Dale, and an unidentified man at the station at 38th and Sherman, he heard Elmore say "it would be all right to sell those CBs through the station because they came from the center of town". He heard Lamb say they could deliver as many CBs as the man could sell[5] and heard Montgomery say "that when they returned and sold the CBs that they would pay the repair bill on his Oldsmobile[6], the twenty dollar bill, with the receipt from the CB sale." He thought they were offering to sell the CBs for thirty dollars each, but Dale did not purchase any.

On cross-examination Sgt. Bowman admitted he did not hear all the conversation because he walked from the bay area into the office area

---

5. At another time he attributed this statement to Montgomery with Lamb nodding confirmation.

6. All the other evidence is that the Oldsmobile belonged to Lamb.

to use the phone "about three times". (There was no mention of the purpose of which he used the phone.) Several times in the office he conversed with Dale, the station owner, suggesting questions to ask the defendant. He was asked why Dale was not a witness and it was eventually developed that Dale had expressed fear of damage to his station if he testified. Some of the cross-examination developed into argument with Bowman as to the weakness or strength of the State's case which led to his expressing his opinion that defendants were knowingly selling a stolen radio "or I wouldn't have instructed them to be stopped and arrested."

Reduced to its simplest terms, the case against the three defendants is this: Starkey's radio was stolen from his automobile on February 11 or 12. On February 12 it was recovered from Elmore's black Cadillac which was in his possession at the time. His explanation is that he bought it and another CB radio from a stranger for the ridiculously low price of thirty dollars and that one of the radios had a bent bracket. His possession of this recently stolen radio and his explanation thereof are sufficient to sustain the trial court's inference that he was gulity of exerting unauthorized control over it with intent to deprive Starkey of its use and benefit. But whether the trial court was justified in finding that Lamb and Montgomery were also in possession (constructive or actual) of the radio is not as readily apparent. Elmore admitted his possession and sought to explain it by a story which the judge obviously did not believe, at least not insofar as Elmore professed to believe that the radio was not stolen. The radio was also in Elmore's automobile at a time when Elmore was the car's driver and sole occupant. Indicia of exertion of control by Lamb or Montgomery are not so plentiful and, on the face of a cold transcript of the trial testimony, are considerably less convincing. But at the appellate level it is not our right or duty to determine the accuracy of Sergeant Bowman's perception of the conversation he overheard in the service station, admittedly only in part and often out of sight of the speaker.

We must therefore assume that the trial judge was convinced beyond a reasonable doubt by Bowman's testimony that Lamb and Montgomery were actively aiding and abetting Elmore in his attempt to sell the radios to Dale at a price and under circumstances which Bowman justifiably believed implied they knew the radios were

stolen. This aiding and abetting of Elmore's ongoing exertion of unauthorized control over Starkey's radio made Montgomery and Lamb accessories before the fact to that continuing unauthorized control and thus made each of them subject to conviction under Ind. Ann. Stat. § 35-1-29-1 (Burns Code Ed., 1975) for the crime of theft "in the same manner as if he were a principal". And that same evidence was sufficient to convict them of uniting and combining with each other and with Elmore, and Elmore with them, for the purpose of committing that felony, which is to say, to convict them of conspiracy to commit a felony as defined and proscribed by Ind. Ann. Stat. § 35-1-111-1.[7] *Robertson v. State* (1952), 231 Ind. 368, 370, 108 N.E.2d 711, 712; *Diggs v. State* (1977), 266 Ind. 547, 364 N.E.2d 1176, 1179.

### III.

Although neither error assigned by appellants is ground for reversal, this cause must nevertheless be remanded with instructions to the trial court to modify its judgment in order to avoid double punishment. As our detailed recital of the evidence demonstrates, the exertion of unauthorized control (i.e., the theft charged in Count I) and the conspiracy to commit the theft were, so far as the evidence discloses, the same continuous event. Thus, while neither of these two crimes is a lesser included offense of the other in the sense that it was impossible to have committed one without first having committed the other, and therefore it is doubtful that either truly merged into the other so as to preclude, for that reason, conviction and sentence for both of those crimes, there nevertheless is a separate but related rule which precludes the double punishment imposed in this instance. *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233, 1243:

" '[B]efore the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct.' *Thompson*

---

7. "Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony, within or without this state, or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty-five dollars [$25.00] nor more than five thousand dollars [$5,000], and imprisoned in the state prison not less than two [2] years nor more than fourteen [14] years."

*v. State* (1972), 259 Ind. 587, [592], 290 N.E.2d 724, 727; *Hudson v. State* (1976), [265] Ind. [302], 354 N.E.2d 164, 170."

Since neither theft nor automobile banditry is truly a lesser included offense in burglary (inasmuch as it is possible to commit burglary without having first committed either of those crimes[8]), it was apparently upon the above quoted separate-but-related rule that *Sansom v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171, 1172, held that those crimes "merged into the burglary, as the offense for which the greatest penalty is provided." Because of that merger *Sansom* remanded the cause to the trial court for vacation of the theft and automobile banditry sentences.[9]

Therefore, we affirm the judgment and sentence for the conspiracy but remand the cause to the trial court for vacation of the judgment upon the theft count.

Lowdermilk, J., participating by designation, concurs.

Buchanan, C.J., dissents in part and concurs in part, with opinion.

## DISSENTING IN PART AND CONCURRING IN PART

BUCHANAN, C.J. — Recent cases, such as *Sansom v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171; *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d

---

8. " '. . . to be necessarily included in the greater offense, the lesser offense must be such that it is impossible to commit the greater, without first having committed the lesser . . . .' " *Hitch v. State* (1972), 259 Ind. 1, 14, 284 N.E.2d 783, 791, quoting from *Bryant v. State* (1933), 205 Ind. 372, 378, 186 N.E. 322, quoting from *House v. State* (1917), 186 Ind. 593, 595-596, 117 N.E. 647, 648. Furthermore the burglary was complete in *Sansom* when entry was made with intent to commit a felony therein, regardless of whether or not the intended felony was ever committed, *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841, 842-843.

9. *Sansom* thus overrules by implication *Tungate v. State* (1958), 238 Ind. 48, 52, 147 N.E.2d 232, 234, which held: " '. . . a first count may set out a breaking and entering with intent to steal, and a second may allege the larceny as a separate thing, and thereon the defendant may be convicted and sentenced for both' ", quoting 1 Bishop Crim. Law, 9 Ed. § 1062, p. 788. Conviction and sentence on both counts of an affidavit charging (1) grand larceny and (2) second degree burglary were affirmed in *Tungate*.

Again, by implication, *Jones v. State* (1977), 267 Ind. 205, 369 N.E.2d 418, 421, overruled *Tungate, supra:*

"The appellant was convicted of both second degree burglary and theft, based upon the same incident, and statutory penalties were imposed for both. *In this situation,* theft was a lesser included offense of the burglary." [Our emphasis.] *Sansom v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171.

1233; *Hudson v. State* (1976), 265 Ind. 302, 354 N.E.2d 164; *Swininger v. State* (1976), 265 Ind. 136, 352 N.E.2d 473, and like authority on which the majority rely, appear to be in conflict with other well established, traditional principles of criminal law repeatedly recognized by the Indiana Supreme Court.

The majority have "merged"[1] theft into conspiracy in this case; in *Coleman v. State* (1975), 264 Ind. 64, 339 N.E.2d 51, auto banditry was merged into armed robbery; in *Swininger v. State, supra,* armed robbery was merged into inflicting injury in the commission of a felony; in *Sansom v. State, supra,* theft and auto banditry were merged into burglary; in *Candler v. State, supra,* armed robbery was merged into felony murder. The result in each of these cases has been that the defendant has been freed of punishment for an offense he has committed because it arose out of the same transaction — even though the lesser crime was not a necessarily included offense.

Although the sentences would usually run concurrently,[2] the fact that more than one sentence is imposed could have significant impact on the offender. For one thing, though good time is based on the longest sentence imposed, a parole board could be influenced by the fact that the offender is serving more than one sentence at the time he comes up for parole. More importantly, all the convictions count for the purpose of determining habitual offender status should the offender be convicted of another felony.

Marching under the banner of "merger" from time to time have been various concepts: indivisibility, separate offenses,[3] necessarily lesser included offenses, separate but related offenses, and former jeopardy. By virtue of one or more of these concepts offenses arising out of the same criminal transaction or set of operative facts "merge" into the of-

---

1. Although the Supreme Court has not stated its history, this doctrine apparently traces its origins to the English common law doctrine of merger which called for the merger of misdemeanors into felonies if the same conduct constituted both. See West's A.I.C. 35-41-4-3, p. 374.

2. The general rule in Indiana has been that consecutive sentencing is not permitted unless a specific statute authorizes it. *Hawkins et al. v. Jenkins et al.* (1978), 268 Ind. 137, 374 N.E.2d 496. However, the new criminal code leaves the decision of whether or not sentences should run consecutively or concurrently to the trial judge. IND. CODE 35-50-1-2.

3. *See Buckley v. State* (1975), 163 Ind. App. 113, 322 N.E.2d 113, footnotes 5 & 6, p. 116.

fense for which the greatest penalty is provided. *See, e.g. Sansom v. State, supra.*

This is so if the separate offenses are all part of the same continuous event, if the conduct involved arises "from but one set of operative circumstances", or if the conduct is not "independently supportable, separate, and distinct". *Thompson v. State* (1972), 259 Ind. 587, 592, 290 N.E.2d 724, 727. *Candler v. State, supra; Swininger v. State, supra.* The concern appears to be that an accused may suffer multiple punishment for the same offense.

Such an approach seems to me to nullify long standing Indiana statutes creating separate offenses for such crimes as conspriacy and automobile banditry,[4] to say nothing of equally long standing case law that separate offenses may arise out of the same course of continuing conduct because *proof of different facts is required* for each statutory offense charged. *See Dunkle v. State* (1961), 241 Ind. 548, 173 N.E.2d 657; *Steffler v. State* (1952), 230 Ind. 557, 104 N.E.2d 729; *Kokenes v. State* (1938), 213 Ind. 476, 13 N.E.2d 524; *Durke v. State* (1932), 204 Ind. 370, 183 N.E.2d 97; *Buckley v. State, supra.*

In determining whether a defendant has been subjected to former jeopardy (one aspect of which bars multiple punishments for the same offense) the Supreme Court expressly rejected the "same transaction" test and adopted the "identity of offense" test. *Ford v. State* (1951), 229 Ind. 516, 98 N.E.2d 655; *Foran v. State* (1924), 195 Ind. 55, 144 N.E. 529; *State v. Elder* (1879), 65 Ind. 282. The court in *Ford*, in discussing the proper test with respect to former jeopardy stated the identity of offense test to be:

Appellant seems to argue in his brief that this was the same trans-

---

4. IND. CODE 35-12-2-1 relating to automobile banditry was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977, and was not recodified.

IND. CODE 35-1-111-1 relating to conspriacy to commit a felony was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For new law see IND. CODE 35-41-5-2.

Under IND. CODE 35-41-5-3 dealing with multiple convictions a defendant may not be convicted of both a conspiracy and an attempt with respect to the same underlying crime. However, it will be noted that it does not preclude convictions for the commission of a crime and for conspiracy to commit the same underlying crime. For a discussion see West's A.I.C. 35-41-5-3, p. 519.

action. If appellant is claiming that *the "same transaction" test* should be applied, this test *was expressly repudiated* in *State v. Elder* (1879), 65 Ind. 282; *Foran v. State, supra. The test to be applied on the issue of former jeopardy is whether the second charge is for the same identical crime* as that charged by a prior affidavit or indictment upon which a defendant has been placed in jeopardy. As stated in *Foran v. State, supra,* in applying the "identity of offense" test, the test is whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction. In other words, *would the same evidence be necessary to secure a conviction in the case now before us as in the former prosecution?* (emphasis supplied)

> 229 Ind. at 520-21, 98 N.E.2d at 657.

If the "same transaction test" does not apply to the determination of what constitutes a separate offense for purposes of former jeopardy, logically it should not apply to the sentence arising out of that separate claim.

Favoring such logic is the obvious fact that our Supreme Court has merged offenses quite selectively. The unmistakable inference is that the "identity of offense" test has not been abandoned in favor of the "same transaction" test. For example, in *Diggs v. State* (1977), 266 Ind. 547, 364 N.E.2d 1176, conspiracy to deliver heroin and the actual delivery of heroin were not merged even though the conspiracy occurred at the same time and place as the delivery. In *Mitchell v. State* (1977), 266 Ind. 656, 366 N.E.2d 183, sentences for entering to commit a felony, rape and robbery were all permitted to stand despite the fact that rape and robbery were the felonies the defendant entered to commit and all took place in one transaction. In *Moore v. State* (1977), 267 Ind. 270, 369 N.E.2d 628, the court did not merge carrying a gun in violation of the Firearms Act, armed robbery and first degree burglary though all were part of the same continuing event. In a quite recent case, *Willis v. State* (1978), 268 Ind. 269, 374 N.E.2d 520, first degree burglary and rape were not merged though the burglary was committed with intent to commit the rape.

To use the same transaction test to "merge" sentences of statutory offenses which require proof of different facts, creates the spectre of encouragement of criminal conduct. *A crafty criminal* can with impunity commit multiple lesser crimes secure in the knowledge they will be

"merged" into a greater one.[5] Surely a greater harm is done society by the burglar who breaks in with intent to steal and who in fact steals than by the burglar who breaks in with intent to steal but changes his mind. Yet under the merger doctrine as it now exists, both would receive the same sentence. By the same token, if the doctrine is systematically applied, burglary could merge with rape; incest with rape; rape with kidnapping (if the kidnapping were committed in order to accomplish the rape), etc.

Until the former jeopardy "identity of offense" test is specifically disowned by our Supreme Court, I must assume it still has vitality, and that the statutes creating separate crimes on proof of additional or different facts are valid as the basis for sentencing a defendant to multiple sentences for multiple offenses arising out of the same transaction. This has been the premise on which prosecuting attorneys, the courts, and the legal profession have operated for many years.

I would affirm the trial court because by statute theft[6] is a separate offense requiring proof of additional or different facts from conspiracy[7] and therefore does not merge.

In all other respects, I concur with the majority.

NOTE—Reported at 375 N.E.2d 660.

---

5. Lesser offenses which are necessarily lesser included offenses have by statute long been treated as merging into the greater offense for purposes of sentencing, and this concept is not questioned. See IND. CODE 35-8-1A-6.

6. IND. CODE 35-17-5-3, repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For new law see IND. CODE 35-43-4-2.

7. IND. CODE 35-1-111-1, repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For new law see IND. CODE 35-41-5-2.