William J. WALDEN, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 69A01–8812–CR–394.

Court of Appeals of Indiana, First District.

May 25, 1989.

James B. Morris, Osgood, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, William J. Walden (Walden), was convicted by a Ripley Circuit Court of receiving stolen property, a Class

D felony under IND. CODE 35–43–4–2(b). From an enhanced sentence of four years, he appeals.

We reverse.

## STATEMENT OF THE FACTS

Robert E. Cook, his wife, Sara, both of whom are in their early seventies, reside in North Palm Beach, Florida. Robert suffers quite badly from emphysema and loss of hearing. Sara suffers from heart disease, respiratory disease, glaucoma, congestion, and nerve problems for which she had been hospitalized at a time near the occurrence of the events herein described. During the latter part of 1987, they had advertised for sale a 1977 Cadillac titled to Robert. In January of 1988 a man who identified himself as "Bill Walden" (Bill) appeared at their residence and indicated an interest in buying the car. He was described by the Cooks as a nice looking, well-built, young man who was clean shaven, dressed neatly in jeans and a sport shirt, and who stood approximately 5'8" tall. They estimated his age to be in the late twenties or thirties. Cook accompanied Bill as the latter test drove the car. Upon returning to the Cook residence, Bill immediately accepted the Cooks' offer of $1250 for the car. He produced a check, filled it out, signed it as "Bill Walden" and handed it to Cook. The check bore the printed name and address of Bill Walden, 401 Michigan Street, Greensburg, Indiana. It was drawn on the Napoleon State Bank, Napoleon, Indiana.

January 1, 1988 fell on a Friday, a time when most offices and business houses were closed for the New Year's weekend. The two agreed that Bill could drive the car to his residence on Sanger Island, a distance of about three miles, to show the car to his wife. He would return the car that evening and on the Monday following, the parties would go to the license branch to transfer and license the car. Concluding their deal on that amicable note, Bill drove off in the Cooks' Cadillac never to be seen by the Cooks again. Not surprisingly, the check bounced.

At 8:05 p.m. on January 6, 1988, Officer Bonnlander of the Batesville, Indiana Police Department stopped Cooks' Cadillac being driven the wrong way on a one-way street. Unable to produce an operator's license, the driver and sole occupant of the car gave the officer a certificate of registration in the name of Robert E. Cook whose identity the driver claimed. After issuing the driver a ticket in the name of Robert E. Cook, the officer released him. A very short time later, upon discovering that the car had been stolen, Officer Bonnlander found and arrested the driver who was identified as William J. Walden, the defendant herein. Officer Bonnlander estimated that Walden was 35 to 40 years old. In the car amongst a packet of Walden's papers, Officer Bonnlander found a forged bill of sale purporting to transfer the car from Cook to "Bill Walden."

Walden was charged in the Ripley Circuit Court with receiving stolen property under IND. CODE 35–43–4–2(b). The only evidence produced by the State at trial of the Florida transactions were the depositions of Robert and Sara Cook. The only evidence of the Indiana events was related through the testimony of Officer Bonnlander. Walden produced no evidence. There is no evidence, photographs, handwriting, or otherwise, in the record indicating that the State made any effort to demonstrate that the William J. Walden arrested in Batesville was or was not the same person as the Bill Walden of Florida about whom the Cooks testified.

## ISSUES

Walden presents seven issues for review. However, because of our disposition of Issues II and III, which address the sufficiency of the evidence, we will not discuss the other five issues. We will discuss Issues II and III together, which issues are:

I. Whether proof that an individual is guilty of theft by exerting unauthorized control over property will defeat a specific charge for receiving stolen property under IND. CODE 35–43–4–2(b).

II. Whether the evidence elicited at trial was sufficient to establish Walden was guilty of receiving or whether it established he was guilty of theft.

### DISCUSSION AND DECISION

The threshold question presented is whether the charged offense of receiving stolen property can be committed by the actual thief under IND. CODE 35–43–4–2(b). The resolution of that question is to be found in the historical perspective of the crime, the cases construing it, and the theft act. The theft act was originally enacted in 1963. Acts 1963 (Spec.Sess.) Chapter 10, § 3 defined theft in five subparagraphs. A person committed theft when he knowingly (a) obtained or exerted unauthorized control of the property of the owner; (b) obtained by deception control over the property; (c) obtained by threat control over the property; (d) obtained control over stolen property knowing the property to have been stolen; or (e) brought property into the state which he had obtained control of by theft.

In the case of *Coates v. State* (1967), 249 Ind. 357, 229 N.E.2d 640, the court held that under the 1963 Act subsections (a) and (b) were separate offenses, and where the defendant was charged with receiving under (d) proof that he was the actual thief under (a) entitled him to an acquittal. The court noted that this result was consistent with the result under prior law where proof of larceny under the charge of receiving presented a failure of proof as they were distinct crimes.

A similar result was reached in *Lawrence v. State* (1968), 250 Ind. 161, 235 N.E.2d 198. In that case the defendant was charged with theft by deception under subsection (b) of the 1963 Act. However, the jury's verdict found the defendant guilty of theft by obtaining and exerting unauthorized control under subsection (a). The court reversed, holding that the verdict was inconsistent with the charge.

Commencing with *Green v. State* (1972), 258 Ind. 481, 282 N.E.2d 548, some narrowing of the rule announced in *Coates* occurred. In *Green* the defendant was charged with exerting unauthorized control under subsection (a) of the theft act. The evidence showed that the defendant raised the amount of a payroll check made to her order to a sum greater than its original amount. The argument was made that pursuant to *Coates* and *Lawrence* she was guilty of theft by deception under subsection (b) or guilty of nothing at all. The court held that subsection (a) was very broad and did not limit the means by which unauthorized control may be obtained. The prosecuting attorney had the option to present the charge under some specific section of the statute or to present the charge under the more general provision (a). The court distinguished *Coates:*

> In that case the charge was theft by obtaining control of property stolen by another while the evidence showed a variance, namely that the appellant stole the property himself.

258 Ind. at 484, 282 N.E.2d at 550. The court continued:

> In this case before us, the section defining theft as when one "knowingly obtains or exerts unauthorized control over property of another" comprehends a very broad field of theft, including any other narrowly defined activity specifically defined in the statute, such as obtaining "by deception control over property of the owner or a signature to any written instrument."

*Id.*

Green was followed by *Elmore v. State* (1978), 176 Ind.App. 306, 375 N.E.2d 660. *Elmore* held that the fact that there are other included offenses which are more narrowly defined, namely receiving stolen property, does not prohibit the state from prosecuting under the broader provision of the statute such as the one in that case which covered any unauthorized control over the property of the owner.

Finally, *Green* and *Elmore* were followed in *Nash v. State* (1982), Ind.App., 433 N.E.2d 807. In *Nash* the defendant was charged under IND. CODE 35–43–4–2(a) with theft by exerting unauthorized control over property. However, the evidence showed that he had knowingly pur-

chased the property from the original thieves. At that time, the theft statute, IND. CODE 35–43–4–2, read as follows:

(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.

(b) A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony.

The court held:

This raises the issue whether evidence sufficient to sustain a conviction of receiving stolen property under subsection (b) is sufficient to sustain a conviction pursuant to subsection (a) of the theft statute. We hold it is. It is well established in Indiana that subsection (a) of the theft statute, which makes it an offense to knowingly exert unauthorized control over property of another, comprehends a broad field of conduct including any other narrowly defined activity specifically enumerated in the statute, such as receiving stolen property. *Green v. State* (1972), 258 Ind. 481, 282 N.E.2d 548; *Elmore v. State* (1978), [176] Ind. App., [306] 375 N.E.2d 660, *vacated on other grounds*, 269 Ind. 532, 382 N.E.2d 893. In essence, facts sufficient to sustain a conviction of receiving stolen property pursuant to subsection (b) are also *prima facie* proof of the general charge of exerting unauthorized control over property. As our supreme court stated:

The fact that there are other included offenses, which are more narrowly defined does not prohibit the state from prosecuting under a broader provision of the statute, such as the one in this case which covers any "unauthorized control of the property of the owner."

*Green*, 282 N.E.2d at 550.

This construction of the theft statute is warranted by the definition of terms used in the statute contained at I.C. 35–43–4–1 (Burns Code Ed., Repl.1979 and Supp.1981). As the Indiana Criminal Law Study Commission stated in its comments to the theft statute:

Obtaining control over stolen property is equivalent to exerting unauthorized control over property of the owner given this proposed chapter's definition of "exerting" and "owner."

433 N.E.2d at 813.

The current version of the theft act enacted in 1976, and as amended reads as follows:

(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. However, the offense is a Class C felony if the fair market value of the property is at least one hundred thousand dollars ($100,000).

(b) A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony. However, the offense is a Class C felony if the fair market value of the property is at least one hundred thousand dollars ($100,000).

Most of the specific and more narrowly defined offenses originally contained in Acts 1963 (Spec.Sess.) Chapter 10, § 3 are now included in the term "exerting unauthorized control over the property of another person" by the definition section of the act, IND. CODE 35–43–4–1. Significantly, receiving is omitted from the definition section as being an included offense. Rather, it is stated as a separate offense in IND. CODE 35–43–4–2(b) as it originally was in the theft act.

■ Analysis demonstrates that *Coates* and *Lawrence* were not overruled by *Green, Elmore,* or *Nash*. Those latter cases distinguished *Coates* and *Lawrence* and held only that the more specifically defined offenses against property such as theft by deception and receiving were included in the broader term of exerting unauthorized control. *Green, Elmore,* and *Nash* do not hold that the broad term of exerting unauthorized control is included

within the narrowly defined offense of receiving. The rationale of those cases would forbid such a result. The theft statute has been amended many times since the time *Coates* and *Lawrence* were decided, and we see no indication of legislative intent that those cases be overruled. To the contrary, receiving still remains a specifically defined offense under IND. CODE 35–43–4–2(b). When receiving is specifically charged, *Coates* is still controlling, and proof that the defendant was the actual thief will defeat the charge.

The second question to be answered in order to resolve this case is whether the evidence is sufficient to show that Walden was guilty of receiving or whether the evidence more certainly demonstrates that he was the original thief. The State argues that guilt was established by proof that Walden retained the car knowing it to be stolen. It argues that the Florida transaction amounted to theft by deception by someone. Therefore, the car had been the subject of theft. When Walden was apprehended in Indiana in possession of the car with a forged bill of sale, he was knowingly retaining the car in Indiana.

■ Walden argues that Cook was the owner, Walden wrote the check to him, had the car in his possession six days later with the forged bill of sale, and the check was not good. Therefore, he concludes he got the car from the Cooks and could not be guilty of receiving it. He contends that this is a Florida theft or bad check case, and not an Indiana case. We agree.

From the evidence and the inferences to be drawn therefrom, every probability exists that Walden himself was the thief who took the car from the Cooks by deception. A man who identified himself as Bill Walden approached the Cooks on January 1, 1988 at their home in North Palm Beach, Florida. He agreed to buy the car and wrote a check for it to the Cooks on the Napoleon State Bank in Napoleon, Indiana. The check bore the printed name and address of Bill Walden, 401 Michigan Street, Greensburg, Indiana. The man signed the check Bill Walden and the check bounced. We are not told whether an account existed or whether it was an overdraft. Walden,

the defendant herein, was apprehended with the car in Batesville, Indiana, six days later. Batesville and Napoleon are both located in Ripley County no more than 10 miles apart and Greensburg is located in adjoining Decatur County, no more than 15 miles distant from either Batesville or Napoleon. In the car was found a forged bill of sale. Its full text is as follows:

Jan. 1, 1988

To Whom It May Concern:

This is to certify that William Walden has purchased this automobile from me and due to an emergency departure, there was not enough time to transfer title. My name is Robert Cook, at 1836 Junco Road, N. Palm Beach, Fla. 33408.

/s/ Robert Cook

Automobile description:

1977 Cadillac El Dorado

AIL–705 FLA tag.

*Record* at 253.

Conversely, there is absolutely no evidence in the record or evidence from which an inference can be drawn that there was another person who originally stole the car, or that Walden, the defendant, received the car from another person. The evidence relied upon by the State is that he was merely found in possession of it in Batesville. In a prosecution for receiving stolen property, knowledge of the stolen character of the property, an essential element, may not be inferred solely from the unexplained possession of recently stolen property. *Adkins v. State* (1989), Ind., 532 N.E.2d 6; *Choate v. State* (1984), Ind., 462 N.E.2d 1037; *Johnson v. State* (1982), Ind. App., 441 N.E.2d 1015. This is in contrast to the rule that such evidence will support a charge of theft. *Maynard v. State* (1987), Ind.App., 508 N.E.2d 1346; *Atkins v. State* (1986), Ind.App., 499 N.E.2d 1180.

The State argues that the possession of the forged bill of sale and the deceptive statements Walden made to the officer upon his arrest in Batesville support the receiving theory. The evidence more properly supports the proof that Walden was the original thief. The writer of the bill of sale knew the Cooks' address, the date of the transaction, the fact of purchase, the emergency departure, and the fact that ti-

tle transfer and licensing could not be accomplished in Florida on a New Year's weekend. Those matters corresponded exactly with the Cooks' testimony. Such coincidence leads to the inference that Walden was at the Cooks' home on January 1, and does not lead to any inference that Walden obtained the car at a later time from a third person. The deceptive statements given the police officer do not add anything to the case for it can be inferred that a thief would likewise be evasive. Further, it can be inferred from the name and address on the check, and the close proximity between Batesville, where he was apprehended, Napoleon, the location of the bank, and Greensburg, his purported address, that Walden had returned to familiar surroundings after getting the car. Such evidence corroborates the fact that he was the person who took the car from the Cooks.

The State did not burden the record with proof relative to identification or non-identification of Walden by photographic means when they deposed the Cooks. Handwriting in this case abounds but there is no effort made to show whether Walden was or was not the author of the bill of sale. Additionally, there was no effort made to show whether the bank account at Napoleon was real or ficticious, or whether Walden lived or did not live at Greensburg then or in prior times. We are left by the State to guess and speculate upon matters that could have been put to rest in the trial. What the State has proven is that a theft by deception or a bad check case occurred in Florida.

For the above reasons, this cause is reversed and the trial court is ordered to vacate the judgment and discharge Walden.

Judgment reversed.

STATON, J., concurs.

ROBERTSON, J., dissents w/opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent from the majority opinion for the reason that Walden was correctly charged with the crime that he committed.

The majority reliance upon the cases of *Coates v. State* (1968), 249 Ind. 357, 229 N.E.2d 640; *Lawrence v. State* (1968), 250 Ind. 161, 235 N.E.2d 198; *Green v. State* (1972), 258 Ind. 481, 282 N.E.2d 548; *Elmore v. State* (1978), 176 Ind.App. 306, 375 N.E.2d 660; and, *Nash v. State* (1982), Ind.App., 433 N.E.2d 807, is not merited under the facts of this case. Broadly stated, the foregoing cases address the question of how to properly charge a defendant under several theft or possession of stolen property sections of the criminal law.

Generally speaking, criminal conduct which occurs wholly beyond the borders of this state cannot be prosecuted in Indiana. *Green v. State* (1953), 232 Ind. 596, 115 N.E.2d 211. *See also,* IND. CODE 35–41–1–1.

It is reasonable to assume Walden did steal the car from the Cooks; however, that theft occurred in Florida and cannot be prosecuted in Indiana. On the other hand, the evidence did show that Walden received or retained stolen property in Indiana. The distinction of the thief being a possessor of stolen goods is of no consequence under these facts.

The State of Indiana properly charged Walden with receiving or retaining stolen property for the reason that I.C. 35–43–4–2(b) applies to the facts.

I would not reverse for the reasons stated in the majority opinion.