COCHRAN v. STATE OF INDIANA.

[No. 1169S273. Filed December 17, 1970. No petition for rehearing filed.]

*Albert W. Eubank,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *R. Michael Bruney,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant and his sister, Sue Wells, were indicted for receiving stolen goods in violation of Acts 1963 (Spec. Sess.), ch. 10, § 3, Burns Ind. Stat. Ann. § 10-3030(1) (d) and were tried without jury in Marion County Criminal Court Division Two. Upon conviction Sue Wells was fined $1,000.00 and appellant was sentenced to one to ten years in prison. Sue Wells is not a party to this appeal.

Appellant's first contention on appeal is that there was insufficient evidence to sustain the trial court finding. In reviewing the allegation of insufficient evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the finding of the trial court. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

Under this indictment the State was required to prove that appellant: (1) knowingly obtained control, (2) over certain stolen property, (3) knowing the property to have been stolen by another, (4) with intent to deprive the owner permanently of the use and benefit of this property. The evidence which tends to support the trial court finding is as follows:

Ralph Leffler testified that in November, 1967, he lived at 4560 Jamestown Court in Indianapolis. He testified that he owned eight guns which were stolen on November 30, 1967, and that the "total value" of the eight guns was $2,-000.00 to $2,500.00. Leffler identified State's Ex. 1 as one of

his stolen rifles because it had a chip out of the stock and a scratch on the scope. Leffler said when he bought that gun he paid $150.00 to $160.00 for it and he put a scope on it.

Gary Grimm testified that around November 30, 1967, he "acquired" some guns at 4560 Jamestown Court in Marion County. On December 2, 1967, while riding home from work with Sue Wells he told her he needed money very badly to pay a bondsman and a lawyer and that he had to get rid of the guns because they were "hot." He gave her four guns at that time and later received $160.00 from her. Grimm testified that he didn't actually sell them to Wells but when asked who he sold them to he said, "Well, I don't know how to answer that, really." The State did not pursue the point. Grimm said he'd never seen the appellant before in his life until the hearing in Municipal Court long after December 2, 1967.

Officer Bates, Indianapolis Police Department, testified that he went to appellant's house with a search warrant but he didn't need it because appellant invited him in and when told what the police were looking for appellant went to a closet and gave them a Browning .22 automatic rifle, State's Ex. 1. Appellant told Bates that was one of the guns he had purchased through Sue Wells but that he had sold the other guns. Appellant denied any knowledge that they were stolen. Appellant also had two shotguns and a Smith & Wesson pistol in his house. Bates said the pistol had been stolen but did not say when, where or by whom. Bates testified that Leffler told him that at some unspecified time the value of the four guns was approximately $800.00.

Deputy Sheriff John Moore, an acquaintance of Grimm's, testified that he had seen State's Ex. 1 in the possession of Grimm around the first or second of December, 1967. Moore identified his initials which he had placed on the gun.

Sgt. Turner of the Indianapolis Police Department testified that in the course of his investigation of this case he had occassion to talk to Sue Wells at her place of employment

in the latter part of May or early June of 1968. Turner informed Wells of her rights and then told her she had been implicated in receiving four stolen guns from Gary Grimm. Wells told Turner she had no information whatsoever as to where the guns were, and that Grimm had never given her any guns.

Sylvia Dye testified that sometime in the summer of 1968, Wells asked appellant if the guns were still in the State and he said no. Wells told her brother she was afraid she would be put in jail and appellant told her he would bail her out if she were arrested. Dye also testified that she was with Sue Wells when Grimm put the guns in Wells' car and that the first time Dye ever saw the guns Grimm told her they were his hunting guns.

Sue Wells testified that on December 2, 1967, she gave Gary Grimm a ride home from work. Grimm asked her if she knew anyone who might want to buy some guns. Grimm told her the guns were his hunting guns and that he wanted to sell them because he needed money badly. Sylvia Dye was with her when this occurred. Wells told Grimm her brother might want to buy them and Grimm put four guns in the trunk of her car. Wells told appellant about the guns being for sale and he talked to Grimm on the phone about the deal. Appellant gave Wells $160.00 which she took to Grimm at a Howard Johnson's restaurant. Wells denied that she knew the guns were stolen.

Appellant testified that in the phone conversation with Grimm, Grimm asked $250.00 and appellant offered $150.00, finally settling on a price of $160.00 for the four guns. Appellant denied he knew or suspected the guns were stolen.

Appellant argues that the above evidence was insufficient to show that at the time appellant acquired the guns he had knowledge they were stolen. It is clear that the State did not prove that Sue Wells or anyone else *told* appellant the guns were stolen. The issue then is whether the trier of fact could have reasonably inferred from the sur-

rounding facts and circumstances that appellant had knowledge that the guns were stolen. *Miller* v. *State* (1968), 250 Ind. 338, 236 N. E. 2d 173; *Wertheimer* v. *State* (1929), 201 Ind. 572, 169 N. E. 40. The test is not whether a reasonable man in appellant's position would have supposed that the goods were stolen, but whether appellant inferred the theft from the circumstances. *Fletcher* v. *State* (1961), 241 Ind. 409, 172 N. E. 2d 853.

Appellee places major reliance on the fact that appellant paid $160.00 for guns allegedly worth $800.00. We emphasize that what is crucial here is *not* the value of the guns to Leffler at some unspecified time in the past but whether, at the time appellant acquired them, they *appeared* to him to have a value so much over $160.00 that appellant would have known they were stolen.

There were three references at trial to the value of different guns. The owner testified that the "total value" of all eight guns stolen was $2,000.00 to $2,500.00. This figure is of no help because Leffler did not break down that total and place a value on each gun, and there is no reason for this Court to allocate any specific value to each of the eight guns.

The second reference to the value of the guns was when Leffler testified that State's Ex. 1, a Browning .22 automatic rifle, cost $150.00 to $160.00 *when he bought it.* The prosecutor failed to ask Leffler *when* he had bought the gun or the value of it at the time of the theft.

The third reference to value was when Officer Bates testified that Leffler had told him that the four guns at stake here had a "value" of $800.00. Leffler was never asked how he arrived at that figure nor whether he meant purchase price to him, fair market value, replacement value, sentimental value to him personally, or some other test of value. It is significant that when he did testify concerning Exhibit 1, Leffler merely gave the *purchase price* at the time he bought the gun. In any case the State made no effort to show that there was a

reasonable basis for this estimate of value. This could have been done through Leffler himself or an expert on guns. Neither is there any evidence of *when* the four guns were supposed to have a value of $800.00. Leffler testified and he was not asked about it. When he did testify concerning Exhibit 1, Leffler merely gave the purchase price *at the time he bought* the gun.

Even if the four guns had a "value" of $800.00 at the time of the theft, that would not mean that they *appeared* to have that value at the time appellant acquired them. The State could have but did not present any evidence whatsoever on the condition of the four guns at the time appellant acquired them. The record does not even show that they were capable of being fired. Grimm could have ruined the four guns prior to the sale or they could have been old and/or inoperable prior to the theft and only of great value to a collector. Several witnesses were in a position to have supplied the vital information as to the apparent value of the four guns at or near the time appellant bought them. There was evidence that appellant sold three of the guns but when he took the stand the prosecution did not even ask him how much he got for them or the condition they were in when he received them. Appellant was never cross-examined as to his knowledge concerning different types of guns and their value.

On this record there is no way it could be known that $160.00 was not a reasonable price to this appellant for the four guns and therefore the price paid does not tend to show that appellant knew the guns were stolen.

Other circumstances relied on by appellee to show appellant's knowledge are: (1) the fact that appellant sold three of the guns after he got them, and (2) the fact that the pistol found in appellant's home had allegedly been stolen. Whatever the probative value of these facts under other circumstances, in the absence of any showing of a large disparity between the apparent value of the guns and the price appellant

·paid for them we do not think these facts alone are sufficient to support an inference that appellant knew the guns were stolen.

Judgment reversed and new trial granted.

Givan, J., concurs; Jackson, J., concurs in result; Hunter, C.J., and Arterburn, J., dissent.

NOTED.—Reported in 265 N. E. 2d 19.