**Terry L. HUNT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 35A02–9108–CR–351.

Court of Appeals of Indiana,
Second District.

Oct. 21, 1992.

John J. Ray, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

On May 10, 1991, appellant Terry L. Hunt was convicted of three counts of Possession of Stolen Property, as Class D felonies.[1] We restate the issues presented for appeal:

I. Whether the evidence was sufficient to support the defendant's convictions of Receiving Stolen Property, as Class D felonies; and

II. Whether the trial judge erred by refusing to give defendant's tendered instruction number two.

We reverse.

On the afternoon of March 1, 1991, Hunt, his friend, James Hurtt, and an unidentified hitch-hiker were test-driving a red Pontiac Trans Am north on Interstate 69. They exited the interstate, drove into Huntington, and eventually parked near the loading dock behind a J.C. Penny store. After observing the actions of the passengers at this location, Huntington police officers Thomas McCutcheon and Steve Updike attempted to stop the car which had started driving toward the main road. The officers eventually stopped the car and talked with the occupants. Although Hunt did not produce any personal identification at this time, he initially gave an incorrect name. Hunt was transported to the City Police Building.

Officer Hochstetler directed Hunt to the detective bureau room and, as a protective measure, asked Hunt to empty his pockets. Hunt attempted to avoid a second request to remove everything from his pockets, but Officer Hochstetler intervened and recovered three credit cards from Hunt's jacket pocket. None of the cards bore Hunt's name.

The credit cards were the property of John W. Self, Nicholas Provenzano, and Joseph B. Johnson. The last time each credit card owner used his card was to charge for services rendered by the Jiffy–Lube located at Rockville Road, Indianapolis, Indiana. The time frame in which the

---

1. Both Hunt and the State concede that although the information charged "Possession of Stolen Property," the language and body of the information as well as the elements instruction given by the trial court track the offense of Receiving Stolen Property in I.C. 35–43–4–2(b) (Burns Code Ed. Supp.1992).

three transactions took place spanned from the "first part of January" to "around January 20th" of 1991.

Throughout this period, Hunt was employed by Jiffy–Lube as an assistant manager at the Rockville Road store. Upon discovering that the cards were no longer in their possession, Self reported a "lost" credit card; Provenzano reported a "missing" card; and Johnson reported his card as "lost or stolen." No one authorized Hunt to keep or use his card.

## I.

 In challenging the evidence's sufficiency, Hunt specifically argues that the State failed to prove that the property Hunt received was the "subject of theft."[2] Restated, this argument either implies that the cards were not stolen *or* that, even if they were, Hunt did not know that the cards had been stolen by a third party. It is well settled that to sustain a conviction for receiving stolen property, the defendant must have knowledge of the stolen character of the property. *Walden v. State* (1989) 1st Dist. Ind.App., 538 N.E.2d 288, 292, *trans. denied. Cf. Coates v. State* (1967) 249 Ind. 357, 229 N.E.2d 640 (proof that a defendant is the actual thief requires acquittal if receiving stolen property is specifically charged).

It is not enough that Hunt merely possessed stolen property. The gravamen of the offense charged is the defendant's guilty knowledge that the property had been stolen by another. *Saucerman v. State* (1990) 1st Dist. Ind.App., 555 N.E.2d 1351, 1353. The State must provide the jury with facts and circumstances from which they could reasonably infer that Hunt knew that the cards were stolen.

*Cochran v. State* (1970) 255 Ind. 374, 377–78, 265 N.E.2d 19, 21. The test is "not whether a reasonable man in [Hunt's] position would have supposed that the goods were stolen, but whether [Hunt] inferred the theft from the circumstances." *Id.*

In the instant case, there is no direct evidence that anyone told Hunt the cards were stolen at the time he took the cards into his possession. To the contrary, Self and Johnson handed their cards to Hunt directly. The State does not suggest that an intermediary then "stole" the cards, thereby implying that stolen property came full-circle to Hunt.

The State points to the fact that unauthorized charges appeared upon Johnson's MasterCard after the date he reported the card lost or stolen. The State did not burden the record with the signatory, date, or type of illicit charges; nor was an effort made to produce the charge slips or billings upon which the transactions appeared. Hunt may or may not have used the card. Mere speculation is too transparent a premise upon which to conclude that Hunt knew the cards were the "subject of theft."

Provenzano believed that he left his card at the Jiffy–Lube and that the card was still at the store. However, Provenzano could not identify Hunt as the person to whom his card was given. In the course of Hunt's employment, customers occasionally left personal property such as credit cards or checkbooks at the store after paying for services. Hunt testified that his superiors at Jiffy–Lube placed such items into his hands for safekeeping. Hunt kept the cards in his blue uniform coat which he wore during working hours and which he left at the store each evening before locking the building.[3]

---

**2.** The trial court instructed that the State must prove beyond a reasonable doubt the Hunt did:
 (1) On or about the 1st day of March, 1991;
 (2) knowingly or intentionally;
 (3) receive, retain, or dispose of the property of another person [specified . . .];
 (4) which property had been the *subject of theft;*
 (5) and such act occurred in Huntington County, IN.

**3.** No one corroborated or refuted the existence of this system. Hunt complains that the absence of witnesses who could verify his explanation is tantamount to non-production evidence. Hunt is wrong. *See Bruck v. State* (1963) 244 Ind. 466, 193 N.E.2d 491, 492 (nonproduction of evidence within the State's power to produce can not be used to raise an inference of guilt). Hunt subpoenaed the witnesses; it was within his power to seek a continuance in order to secure their appearance.

After leaving his employment, on approximately February 19, 1991, Hunt asked his boss to retrieve the blue uniform coat and return it to him. Provenzano's credit card was found in the pocket of the blue uniform coat Hunt was wearing on March 1st. Once again, whether someone other than Hunt had access to Provenzano's card in the interim requires speculation without evidence of record. We may not indulge such speculation.

There is a dearth of evidence from which the jury could have reasonably inferred that the three credit cards were stolen by another or, that when Hunt received the cards into his possession, he had knowledge of their stolen character. This comports with Indiana law. In *Walden, supra,* the evidence disclosed that the defendant fraudulently obtained a car by writing a bad check to the car's owner, forging a bill of sale, and retaining the car in his possession for six days. *Walden,* 538 N.E.2d at 292. There was no evidence that another person stole the car or that the defendant received it from another. This court rejected the State's argument that the evidence supported a receiving theory, stating that it "more properly supports the proof that Walden was the original thief." *Id.*

In *Armstead v. State* (1989) Ind., 538 N.E.2d 943, 947, our Supreme Court upheld a receiving conviction because it was stated that there was sufficient evidence from which the jury could infer that a moped was not stolen by the defendant, or was not stolen by him alone.[4] The defendant and his brother drove away with the victim's moped, but only the defendant was in possession of the moped moments before the police recovered the vehicle. Apparent-ly, the victim was unable to identify the defendant, his brother, or anyone else as the person who took the moped from the victim's possession. At trial, both the defendant and his brother testified that only the defendant stole the moped. Nevertheless, the Court reasoned that the jury "could have deduced the moped was stolen by appellant's brother or by some other person." *Id.* In the instant case, as in *Walden,* Hunt stands alone.

We acknowledge a prosecutorial dilemma which might have resulted in the information charging "Possession of Stolen Property." Indiana's theft statute has endured an arduous, if not tortured, past. *See, e.g., Walden, supra* (tracing the theft act and interpretive case law). Currently, subsection (a) "comprehends a broad field of conduct including any other narrowly defined activity specifically enumerated in the statute, such as receiving stolen property." *Walden,* 538 N.E.2d at 291. Subsection (b), the offense of receiving stolen property, is no longer an included offense that previously might have satisfied the "exerted unauthorized control" (possession) requirement under a theft charge; rather, it has reemerged as a separate offense. *Id.* Consequently, while proof of receiving stolen property is sufficient to convict a defendant of theft under subsection (a), it does not necessarily follow that a person possessing stolen property is necessarily guilty under subsection (b).[5]

At the time of Hunt's arrest, Hunt possessed property which could reasonably be inferred to have been stolen. The manner in which Hunt obtained the cards, i.e., whether Hunt acted alone or in concert to

---

**4.** In this respect, *Armstead* seems to suggest that only one of multiple perpetrators of a theft may be held to be "the thief".

**5.** Indiana is not alone in the legislative gyrations concerning theft and receiving statutes. Addressing this issue, the Mississippi Supreme Court stated:

"The intricacies of the offense of receiving stolen property *vis a vis* grand larceny and other like offenses make it apparent the public would profit were the legislature to revisit, consolidate and modernize the laws of theft and misappropriation, a point we have of late repeatedly noted." (Citations omitted.)

*Williams v. State* (1992) Miss., 595 So.2d 1299, 1303 n. 3.

Likewise, in 1977, the Florida legislature distinguished the crime of receiving as an "anti-fencing" statute which focused upon the criminal redistribution system and intended to punish those who knowingly deal in property stolen by others. *State v. Camp* (1992) Fla., 596 So.2d 1055, 1057. Florida's present receiving statute is a separate offense and may form the basis of a conviction only when there is no evidence that the defendant stole the property in question. *Id.*

steal the cards or whether Hunt received property that had been the subject of theft, remained to be discovered.[6] Pursuing a receiving theory would have required some evidence of a third party thief. If, at some point, it became clear that the evidence showed that Hunt only exerted unauthorized control over the credit cards, the State would have proved theft, not receiving stolen property. *Walden, supra,* 538 N.E.2d at 292 (unexplained possession of recently stolen property raises an inference sufficient to prove theft, but not receiving stolen property).

Upon appeal, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Smedley v. State* (1990) Ind., 561 N.E.2d 776. After reviewing the evidence most favorable to the State and all reasonable inferences drawn therefrom, we must conclude that the State has not proved the existence of each element of the crime charged beyond a reasonable doubt.[7]

The judgment is reversed and the defendant is ordered discharged.

BUCHANAN and HOFFMAN, JJ., concur.

---

6. This contrasts with the circumstances of *Armstead.* In that case, a receiving charge was apparently filed because the police identified the defendant as in possession of the property, but the victim could not positively identify the defendant, his brother, or another as the actual thief. *Armstead, supra,* 538 N.E.2d at 947. We interpret *Armstead* to mean that the receiving charge properly reflected the fact, although the evidence was seemingly to the contrary, that someone other than the defendant stole the moped and that the defendant received and retained the moped knowing it to be stolen.

7. Having so decided, we need not address Hunt's meritless claim that he was entitled to an instruction that where a conviction is based upon circumstantial evidence, every reasonable hypothesis of innocence must be excluded.

