Jeffrey GIBSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 55S01–9411–CR–1121.

Supreme Court of Indiana.

Nov. 28, 1994.

R. Stephen Donovan, Martinsville, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

We write to address the conflict within the Court of Appeals [1] as to whether a person can be convicted of the crime of Receiving Stolen Property if that person is the actual thief.

A jury convicted Jeffrey Gibson in Morgan Superior Court of Attempted Auto Theft,[2] Receiving Stolen Property,[3] Resisting Law Enforcement,[4] and of Public Intoxication.[5] Gibson was sentenced to three years for Attempted Auto Theft, three years For Receiving Stolen Property, one year for Resisting Law Enforcement, and thirty days for Public Intoxication. The sentences for Attempted

---

1. *See Gibson v. State* (1993), Ind.App., 622 N.E.2d 1050, 1054 (holding that the State is not "required to prove the presence of a third-party thief in order to convict defendant of receiving stolen property."). *Contra, Hunt v. State* (1992), Ind.App., 600 N.E.2d 979, 980 (holding that the "gravamen" of the crime of receiving stolen property is "the defendant's guilty knowledge that the property had been stolen by another."), and *Walden v. State* (1989), Ind.App., 538 N.E.2d 288, 291, *trans. denied* (holding that "proof that the defendant was the actual thief will defeat the charge" of receiving stolen property). *See also*

*Byrd v. State* (1992), Ind.App., 605 N.E.2d 231, 234 (following *Hunt* and *Walden*).

2. Ind.Code Ann. § 35–41–5–1 (Burns 1985).

3. Ind.Code Ann. § 35–43–4–2(b) (Burns 1985).

4. Ind.Code Ann. § 35–44–3–3 (Burns Supp. 1993).

5. Ind.Code Ann. § 7.1–5–1–3 (Burns 1985).

Auto Theft and Receiving Stolen Property were made to run consecutively; the sentences for Resisting Law Enforcement and Public Intoxication were made to run concurrently with the sentence for Receiving Stolen Property.

Gibson appealed his convictions for Attempted Auto Theft and Receiving Stolen Property. The Court of Appeals affirmed both convictions. *Gibson v. State* (1993), Ind. App., 622 N.E.2d 1050. Gibson now petitions to transfer the decision of the Court of Appeals on the sole issue of whether Indiana's receiving stolen property statute requires some proof of a "third-party" thief.

### Facts

After the incidents of April 17th, 1992 that gave rise to Gibson's conviction for Attempted Auto Theft,[6] the police began to look for Gibson. They went to his parents' house, where his mother said that she had just driven him to the Eagles Lounge in Mooresville. Gibson spotted the police about the same time that they spotted him on a downtown Mooresville street. Gibson fled. After a brief search of the neighborhood, the police found Gibson, arrested him, and drove him to the Mooresville Police Department for booking on the attempted auto theft charge.

When during the booking procedure officers asked Gibson to remove his belongings from his pockets, Gibson produced a wallet and $162 that was loose in his pants pocket. The police noticed a large bulge in one of Gibson's boots and asked him to remove whatever it was. Gibson refused, said "it was none of their business," and denied having anything in his boot. After a struggle, the police forcibly removed from inside Gibson's sock credit cards, bank cards, and various pieces of identification belonging to one Larry Williams.

When the police notified Williams that they had found his wallet, Williams said that although he had not reported the theft, his wallet had in fact been stolen from his car on the evening of the seventeenth while it stood

6. *See Gibson*, 622 N.E.2d at 1051–52.

7. Section 35–41–2–2(d) provides: "Unless the statute defining the offense provides otherwise, if

parked some two hundred feet from the Eagles Lounge. Williams also said that his wallet had contained about $160 when it was stolen.

### I.

The statute defining the crime of Receiving Stolen Property provides: "A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony...." Ind.Code Ann. § 35–43–4–2(b) (Burns 1985). The State charged by information that Gibson "did knowingly retain the property of Larry W. Williams ... said property having been the subject of theft." (R. 403). In addition to proving the explicit elements of the crime as set out in the statute, the State had also to prove beyond a reasonable doubt that Gibson knew that the property had been the subject of theft. Ind.Code Ann. § 35–41–2–2(d) (Burns 1985);[7] *Stone v. State* (1990), Ind., 555 N.E.2d 475, 477.

There was no evidence that anyone told Gibson that the wallet and its contents had been stolen. Indeed, the unrefuted testimony of Gibson's mother at trial was that she had driven Gibson to the Eagles Lounge on the evening of April seventeenth to pick up Gibson's father. As she was getting out of the car, she found a wallet lying on the ground. She tossed the wallet in the truck, intending to ask Gibson's father to find the wallet's owner later. When she came out of the bar with Gibson's father, Gibson was gone and so was the wallet.

■ The issue, then, is whether the jury could have reasonably inferred from the facts and circumstances surrounding Gibson's possession that Gibson knew that the wallet had been stolen. *Cochran v. State* (1970), 255 Ind. 374, 377–78, 265 N.E.2d 19, 21; *Fletcher v. State* (1961), 241 Ind. 409, 415, 172 N.E.2d 853, 857; *Wertheimer & Goldberg v. State* (1929), 201 Ind. 572, 580–82, 169 N.E. 40, 43; *Byrd v. State* (1992), Ind.App., 605 N.E.2d

a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct."

231, 234; *Hunt v. State* (1992), Ind.App., 600 N.E.2d 979, 980. The test of knowledge is not whether a reasonable person would have known that the wallet had been the subject of theft but whether, from the circumstances surrounding his possession of the wallet, Gibson knew that it had been the subject of theft. *Cochran,* 255 Ind. at 377–78, 265 N.E.2d at 21; *Hunt,* 600 N.E.2d at 980; *Stone,* 555 N.E.2d at 477.

■ When reviewing a case that is essentially circumstantial, an appellate court asks whether reasonable minds could reach the inferences drawn by the jury. *Kizer v. State* (1982), Ind., 437 N.E.2d 466, 467; *Bruce v. State* (1978), 268 Ind. 180, 251, 375 N.E.2d 1042, 1080, *reh'g denied, cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978). The Court of Appeals concluded that there was sufficient circumstantial evidence to support a reasonable inference of knowledge. The circumstances listed by the Court of Appeals supporting an inference of knowledge were: 1) the wallet was in fact stolen; 2) Gibson was present in the vicinity of the theft at about the time of the theft; 3) Gibson fled police; 4) Gibson was in possession of the stolen property when arrested; 5) Gibson had emptied the wallet of its contents; 6) Gibson attempted to conceal various items on his person after his arrest; and 7) Gibson physically resisted the police officers' attempts to determine what he was hiding. *Gibson,* 622 N.E.2d at 1055.

Possession of recently stolen property when joined with attempts at concealment, evasive or false statements, or an unusual manner of acquisition has been held sufficient to support a conviction for Receiving Stolen Property. *See, e.g., Butcher v. State* (1992), Ind.App., 597 N.E.2d 357, *trans. denied* (knowledge may be inferred from possession together with lying about cashing in coins and a change in explanation about how the coins were acquired); *Griffin v. State* (1978) 175 Ind.App. 469, 372 N.E.2d 497 (knowledge may be inferred from possession together with evasive answers at time of arrest and lying about manner of acquisition). *See also Wertheimer,* 201 Ind. at 581–82, 169 N.E. at 44, and cases cited there.

■ We believe that Gibson's presence in the vicinity of the theft at about the time of the theft says little, on these facts, about whether he knew the wallet had been stolen. Likewise, that Gibson fled when the police were looking for him in connection with the charge of Attempted Auto Theft is of insignificant probative value on the question of Gibson's guilty knowledge with respect to the wallet.

But Gibson did possess the wallet and its contents, which had in fact been stolen; he lied about that possession; and he went to considerable lengths to conceal the wallet's contents, including physical resistance. Therefore, the Court of Appeals was entirely correct to conclude that there was sufficient evidence from which a jury could reasonably have inferred that Gibson knew that the wallet had been the subject of theft.

## II.

In reviewing Gibson's conviction for Receiving Stolen Property, the Court of Appeals held that the State is not "required to prove the presence of a third-party thief in order to convict a defendant of receiving stolen property." *Gibson,* 622 N.E.2d at 1054. After reviewing the evolution of the receiving stolen property statute, the Court of Appeals concluded that the "statute does not require as an element of the offense any consideration of who may have actually stolen the property." *Id.*

This conclusion conflicts with the holdings of the Court of Appeals in three other recent cases. In *Hunt,* the court concluded that the "gravamen" of the crime of receiving stolen property is "the defendant's guilty knowledge that the property had been stolen by another." 600 N.E.2d at 980. Similarly, in *Walden v. State* (1989), Ind.App., 538 N.E.2d 288, 291, *trans. denied,* the court determined that "proof that the defendant was the actual thief will defeat the charge" of receiving stolen property. In *Byrd,* the Court of Appeals explicitly followed *Hunt* and *Walden. Byrd,* 605 N.E.2d at 234.

Furthermore, the Court of Appeals holding in *Gibson* also conflicts with a 1967 decision of this Court in which we also held that the actual thief could not be prosecuted for re-

ceiving stolen property. *Coates v. State* (1967), Ind., 249 Ind. 357, 229 N.E.2d 640.

After lengthy consideration, we have concluded that the Court of Appeals holding in *Gibson* is correct and disapprove *Walden*, *Hunt*, and *Byrd* on this issue. Our Court's earlier holding on this issue is distinguished on the basis that it was decided under a prior statutory scheme.

### Evolution of the Statute.

Three major changes to the statutes governing the crimes of "theft" and "receiving stolen property" are relevant to our inquiry. We begin with the statutory definitions of "theft" and "receiving stolen property" as enacted by the 1963 legislature (the "1963 Act"). The 1963 Act read in relevant part:

> Theft in general. A person commits theft when he
>
> (1) knowingly:
>
> (a) obtains or exerts unauthorized control over the property of the owner . . .
>
>   . . . .
>
> (d) obtains control over stolen property, knowing the property to have been stolen by another. . . .

1963 Ind. Acts (ss), ch. 10, § 3.[8] Subsection (d) covers, of course, "receiving stolen property." The legislature itself said of the 1963 Act:

> The general purpose of this act is to unify several traditional distinct offenses against person and property in order to eliminate pointless procedural obstacles to the conviction of thieves and swindlers.
>
>   . . . .
>
> Specifically, it is the purpose of this act to consolidate all of the theft group of crimes except robbery, and traditional terminology has been abandoned in order that that purpose may be achieved. Consequently, whenever the terms "larceny," "obtaining by false pretenses," "embezzlement," "receiving or concealing stolen property knowing it to have been stolen," "blackmail," or similar terms are used in any existing procedural or substantive statute, they shall be construed to mean theft as described herein.

1963 Ind.Acts (ss), ch. 10, § 2.

The consolidation in Indiana of offenses—including receiving stolen property—into a single crime of theft paralleled the recommendations of the American Law Institute's Model Penal Code. The following excerpt from its commentary on the receiving stolen property offense sheds light both on the purpose of criminalizing this behavior and the "actual thief" problem:

> [B]oth analytical and practical grounds suggest that receiving should be assimilated to theft. Analytically, the receiver does precisely what is forbidden by [the theft statute]—namely, he exercises unlawful control over property of another with a purpose to deprive. From a practical standpoint, it is important to punish receivers in order to discourage theft. The existence and functioning of the "fence," *i.e.*, a dealer who provides a market for stolen property, is an assurance to thieves, and especially to professional thieves, of the ability to realize gain from their unlawful activity. *It is also frequently difficult to differentiate those who take from those who hold stolen property for disposition, and it is therefore not uncommon for prosecutors to charge suspected thieves with both taking and receiving.*
>
>   . . . .
>
> Consolidation [of receiving with other forms of theft] reduces the opportunity for technical defenses based upon legal distinctions between the closely related activities of stealing and receiving. One who is found in possession of recently stolen goods may be either the thief or the receiver. *If the prosecution can prove the requisite state of mind to deprive the true owner of the property, it makes little difference whether the jury infers that the defendant took directly from the owner or acquired the goods from another person who committed the act of taking.* Consolidation also has a consequence favorable to the defense by precluding conviction of both offenses for the same transaction.

---

8. These provisions appeared as Burns § 10–3030(1)(a) and § 10–3030(1)(d).

Under prior law, multiple liability occasionally occurred, as where the defendant was held guilty as a principal in the original theft for helping to plan that crime and also of the "separate" offense of receiving for taking his share of the proceeds.

Model Penal Code and Commentaries § 223.6, cmt. 1 (Official Draft and Revised Commentaries 1980) (emphasis added) (footnotes omitted).

The second major change to the theft and receiving stolen property statutes came in 1976 and 1977 when consolidation of theft-type offenses reached its zenith.[9] The list of subsections comprising different types of theft was repealed altogether and replaced by a simple proscription on exerting unauthorized control over property of another person with intent to deprive the other person of any part of its value or use. A new definitions section, Indiana Code § 35–43–4–1, provided:

As used in this chapter "exert control over property" means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber or possess property, or to secure, transfer, or extend a right to property.

Following these changes, Indiana Code § 35–43–4–2 provided:

A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.

1976 Ind.Acts, P.L. 148, § 3, as amended by 1977 Ind.Acts, P.L. 340, § 45 (collectively, the "1977 Act").

The third change in the statute important to our inquiry came in 1979 when the legislature denominated the provision just cited as subsection (a) of Indiana Code § 35–43–4–2 and added the crime of receiving stolen property as subsection (b). As amended, Indiana Code § 35–43–4–2 read:

(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony.

(b) A person who knowingly or intentionally receives, retains, or disposes of the property of another that has been the subject of theft commits receiving stolen property, a Class D felony.

The language of the statute relevant to our inquiry here remains the same today.

### Varying Interpretations of the 1979 Statute Possible.

When the legislature reorganized Indiana Code § 35–43–4–2 into subsections (a) and (b) in 1979, what was it trying to accomplish? As we read it, there are several possible interpretations.

One interpretation, consistent with the *Walden, Hunt,* and *Byrd* holdings, is that the legislature meant to create two entirely separate offenses, authorizing the State to prosecute an actual thief for Theft under subsection (a) and one who is not an actual thief for Receiving Stolen Property under subsection (b). This interpretation would in essence hold that it was the intent of the 1979 legislature to enact by statute our holding in *Coates v. State* (1967), 249 Ind. 357, 229 N.E.2d 640.[10] Under this interpretation, proof that a defendant is the actual thief under subsection (a) will defeat a charge of receiving under subsection (b).

9. In 1971, the legislature codified the provisions of the 1963 Act at Indiana Code § 35–17–5–3 and amended former subsection (d) to provide that the requisite knowledge "may be inferred from the possession of such stolen property." Ind. Code § 35–17–5–3(f) (repealed by 1976 Ind.Acts, P.L. 148, § 24).

10. In *Coates* we said:

Prior to the Theft Code [the 1963 Act], it was certain that proof of larceny under a charge of receiving stolen goods presented a failure of proof, as these were separate and distinct crimes. However, the Theft Code [the 1963 Act] creates the crime of theft defining it in various forms within several statutory provisions. The old crimes of larceny, embezzlement, and receiving stolen property are now redefined as theft under § 10–3030 *supra.*

249 Ind. at 359, 229 N.E.2d at 641 (citations omitted). We went on in *Coates* to say, however, that § 10–3030(1)(a) and § 10–3030(1)(d) did define different crimes, and that proof of one constituted a failure of proof of the other. *Id.* at 360, 229 N.E.2d at 642.

Another interpretation, also consistent with *Walden, Hunt,* and *Byrd,* is that the statute now permits prosecution for Theft under subsection (a) whether the accused is the actual thief or not but permits prosecution for Receiving Stolen Property only of one who is not the actual thief. Such an interpretation would recognize that under the language of the 1977 Act, an accused not the actual thief could be prosecuted for Theft and the legislature in 1979 did not change any of the language of the theft statute, but only denominated it subsection (a) and added a new subsection (b). The legislative intent inferred here would be that, in addition to Theft, the legislature wanted to give the State an additional and alternative basis for proceeding in stolen property crimes where the accused is not the actual thief.

### Text of Receiving Stolen Property Statute Does Not Preclude Conviction of Actual Thief.

We are unable to square either of these interpretations with the text of the 1979 Act. The proscribed conduct in subsection (a) is "exert[ing] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." As defined in Indiana Code § 35–43–4–1(a), a person exerts "control over property" by engaging in one of the following acts with respect to the property:

| | |
|---|---|
| Exerting control over | Obtaining |
| Taking | Carrying |
| Drive | Leading away |
| Conceal | Abandoning |
| Selling | Conveying |
| Encumbering | Possessing |
| Securing | Transferring |
| Extending a right to | |

The proscribed conduct in subsection (b) is "receiv[ing], retain[ing] or dispos[ing] of the property of another that has been the subject of theft." Under Indiana Code §§ 35–43–4–1(a) [11] and 35–43–4–2(b), a person received stolen property by engaging in one of the following acts with respect to the property:

| | |
|---|---|
| Receiving | Retaining |
| Disposing of | Acquiring possession |
| Acquiring control of | Acquiring title to |

After comparing the verbs in the two lists, we are unable to discern any principled distinction between the conduct proscribed in subsection (a) and subsection (b). For the most part, they are lists of synonyms. Indeed, even where two verbs—"taking" and "receiving"—appear to be antonyms, the definitions turn them into synonyms—"receiving" is defined as "acquiring possession." The extensive overlap in the meaning of the words the legislature used to describe the conduct proscribed in the theft and receiving stolen property statutes leads us to the conclusion that the legislature intended a corresponding overlap in the applicability of the statutes.

Furthermore, we find very few of the verbs on either list to be logically inconsistent with the possibility of the accused either being or not being the actual thief. For example, there is nothing in logic that would prevent a person not the actual thief from knowingly possessing the property of another with intent to deprive the person of its use and, therefore, being guilty of Theft. Conversely, there is nothing in logic that would prevent an actual thief from knowingly retaining the property of another that has been the subject of theft and, therefore, being guilty of Receiving Stolen Property.[12]

■ From this we conclude that when the legislature reorganized Indiana Code § 35–43–4–2 in 1979, it intended, in prosecutions involving stolen property, to authorize the State to charge Theft or Receiving Stolen Property, whichever it seems most likely that

---

11. Indiana Code § 35–43–4–1(c) defines "receiving" as "acquiring possession, control or title, or lending on security of property."

12. Of course, the actual words that the State uses to charge the offense will affect the State's burden of proof. The State must prove beyond a reasonable doubt the conduct charged in the information. *See Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1233–37; *Kelly v. State* (1989), Ind., 535 N.E.2d 140, 140–43. Where a specific verb used in the charging instrument is inconsistent with the possibility of the accused either being or not being the actual thief, the State will have certain burdens and the accused certain defenses not available where other words in the statute are used in the charge. These problems do not arise in this case, however, because the State charged Gibson with "retain[ing]" stolen property only, (R. 118), and so used language not inconsistent with Gibson either being or not being the actual thief.

the accused committed. Because the verbs used to describe the conduct proscribed under subsections (a) and (b) are, for the most part, synonymous and not logically inconsistent with the possibility of the accused either being or not being the actual thief, we hold that an accused can be convicted of Receiving Stolen Property even if the actual thief so long as the State meets its burden of proof in all respects.[13]

There is a particular circumstance that also leads us to this conclusion and causes us to reject the *Walden, Hunt,* and *Byrd* approach. As noted by the Model Penal Code § 223.6, cmt. 1, *supra,* it is important that the State have adequate means to punish receivers in order to discourage theft. Yet a "fence," while not the physical taker, may be involved in the actual theft as an aider or abettor. If the fence is an aider or abettor, the fence is the actual thief as a matter of law. Ind.Code § 35–41–2–4 (1993). Surely the distinctions between Theft and Receiving Stolen Property totally blur over if the State is prohibited from prosecuting a fence not the actual taker of stolen goods for Receiving Stolen Property because that fence also aided and abetted the theft and so is the actual thief. The State should be able to charge a person with either Theft or Receiving Stolen Property, depending upon which of those crimes the person seems most likely to have committed. If the State meets its burden of proof with respect to all the necessary elements of either the theft or receiving stolen property offense as alleged in the charging instrument,[14] it is of no consequence whether the accused was the person who actually took the stolen property from its authorized possessor because, once this burden is met, the State has proved that the accused, whether actual thief or not, has done precisely what is forbidden by both subsection (a) and (b)—

knowingly or intentionally exercising unlawful control over property of another with a purpose to deprive. *See* Model Penal Code § 223.6, cmt. 1, *supra.*

■ We recognize that in providing the State the flexibility to proceed under either subsection of Indiana Code § 35–43–4–2, the potential for multiple prosecutions arises. Therefore, we further hold that a person may not be convicted of both Theft and Receiving Stolen Property with regard to property appropriated in the same transaction or series of transactions.[15]

In this case, Gibson was charged with Receiving Stolen Property for "knowingly retain[ing] the property of Larry W. Williams, to-wit: drivers license, [credit cards, currency], said property having been the subject of theft." (R. 118). For the reasons set forth above, he was subject to conviction for Receiving Stolen Property regardless of whether he was the actual thief.

### Conclusion

■ Accordingly, we now grant transfer, vacate the decision of the Court of Appeals, and adopt and incorporate by reference Part I of the decision of the Court of Appeals dealing with Attempted Auto Theft. Ind.Appellate Rule 11(B)(3). Gibson's convictions for Attempted Auto Theft and Receiving Stolen Property are hereby affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

"Receiving" means acquiring possession, Indiana Code § 35–43–4–1(c), of property

---

13. *Compare* Delaware Code Ann. tit. 11, § 856 (1987), which provides:
  (a) In any prosecution for theft it is no defense that the accused is in fact guilty of receiving stolen property. He may be convicted of the crime which he has in fact committed.
  (b) In any prosecution for receiving stolen property it is no defense that the accused is in fact guilty of theft. He may be convicted of the crime which he has in fact committed.
  (c) A person may not be convicted of both theft and receiving stolen property with regard to

property appropriated in the same transaction or series of transactions. He may be charged with the crime he seems most likely to have committed and may be convicted as provided in subsections (a) and (b) of this section.

14. See note 12, *supra.*

15. *Compare* Delaware Code Ann. tit. 11, § 856, note 13, *supra.*

that "has been" stolen, Indiana Code § 35–43–4–2(b), with knowledge that it was stolen. "Retaining" means continuing possession of property that has been stolen after learning that it was stolen. The legislative purpose of the receiving stolen property statute is to render criminal conduct which affects a transfer of stolen goods from those guilty of asporting them to others, which (1) provides profit to the thief and encourages the business of theft and (2) decreases the probability that the true owner will regain possession.

In this case there was some circumstantial evidence that appellant was the thief, i.e., had exerted unauthorized control over Larry Williams' wallet, having taken it from either Mr. William's car or appellant's mother's truck. However, there is virtually no evidence that appellant acquired possession, learned that the credit cards and money were property of Mr. Williams, and then continued possession. *See* Ind.Code § 35–43–4–2(b) (West 1986). Based on the evidence in the record it might be reasonable to conclude that appellant took the wallet from his mother's truck intending to deprive Mr. Williams of the wallet's value or use, but appellant was not convicted of theft. There appears to be no evidence that appellant knew that the wallet had been stolen when he acquired it; such knowledge is required to sustain a conviction for receiving stolen property. *Cochran v. State* (1970), 255 Ind. 374, 377–78, 265 N.E.2d 19, 21. This Court recently accepted, unanimously, the requirement that a conviction under a virtually identical statute (Indiana Code § 35–43–4–2.5(c)) requires proof that the property was stolen by another. *Armstead v. State* (1989), Ind., 538 N.E.2d 943, 947. The demand of consistency in the law does not permit me to join the opinion of the majority.