**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 28 2012, 8:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KENNETH JOHNSON,          )
                          )
    Appellant-Defendant,   )
                          )
        vs.              )          No.  49A02-1112-CR-1110
                          )
STATE OF INDIANA,         )
                          )
    Appellee-Plaintiff.    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James R. Osborn, Judge
Cause No. 49F15-1101-FD-1299

**August 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Kenneth Johnson appeals his conviction for Theft,[1] a class D felony, arguing that the evidence was insufficient. More particularly, Johnson argues that possession of recently stolen property is insufficient to show knowledge that the property was stolen. Finding sufficient evidence, we affirm.

FACTS

Sometime after 2:00 p.m., on December 7, 2010, Laura Selm returned to her residence on 41st Street in Indianapolis, where she observed a vehicle illegally parked on the east side of the street in a no-parking area. Selm pulled up beside the vehicle and attempted to look inside, but the windows were very tinted. Selm observed a man inside the vehicle talking on a telephone. Selm pulled around the corner into her driveway and parked. She exited her vehicle and attempted to obtain the vehicle's license plate number but was unable to because the plastic covering the license plate was yellowed.

As Selm was calling 911, she saw a black male exiting her neighbors' residence through the front door. The man, who had a skinny-to-normal build and below-average height, was carrying an item. Selm went to her back door but returned to the front of the house. At approximately 2:22 p.m., Selm observed the illegally parked vehicle drive south on New Jersey Street. Police officers from the Indianapolis Metropolitan Police Department (IMPD) arrived, and Selm gave a statement and descriptions of the vehicle and the two black males.

---

[1] Ind. Code § 35-43-4-2.

2

Jennifer Boling and her husband were Selm's neighbors who lived on New Jersey Street. When the Bolings left their residence at approximately 7:45 a.m., their residence was secure. Around 2:30 p.m., however, Jennifer received a call from her husband, whom Selm had called to tell him of the burglary. Jennifer returned immediately to the residence.

Jennifer observed a broken window on the lower level of the residence. The front door was wide open, and the house was in complete disarray with items strewn around. Jennifer discovered that nine items that had been present when she left that morning were now missing from the residence, including her engagement/wedding ring, a television, a Wii gaming system, Wii gaming controllers, Wii games, a laptop computer, a sixteen gigabyte iPod touch, an iPod Nano, a computer printer, 14 karat gold earrings, and a box of cigars. Jennifer gave this list to IMPD Officer Lawalin, who responded to the dispatch.

The next day, December 8, 2010, Jennifer visited Joseph's Pawn Shop on Illinois Street, which is located about four blocks from her house. Jennifer showed the employees a photograph of her stolen ring and was told that the ring had been pawned the previous afternoon. Jennifer was shown the ring and identified it as the one that had been stolen from her residence.

Later that day, IMPD Detective Rizwan Khan was assigned to the Bolings' case and called Jennifer. She told him that she had located her stolen ring at Joseph's Pawn Shop and informed him of the other stolen items from her residence. Detective Khan

instructed Detective Octavia Donaldson to confiscate the ring from Joseph's Pawn Shop and conduct an analysis of the pawn tickets from the pawn shop. Detective Donaldson recovered the ring and discovered that Johnson had pawned other items stolen from Jennifer at three different times on the afternoon of December 7, 2010, including the iPod touch, the Wii games and game controllers, the laptop computer, and the gold earrings. The thumb print on the back side of the pawn tickets was compared to a known sample of Johnson's fingerprints and was identified as Johnson's right thumb print.

On January 10, 2011, the State charged Johnson with class D felony theft. On August 20, 2011, Johnson waived his right to a jury trial. On October 18, 2011, at the conclusion of Johnson's bench trial, the trial court stated:

> Mr. Johnson, I'm convinced beyond a reasonable doubt that you're guilty of having property without authorization and with the intent to deprive the people who owned the property of its value or use. So I'm going to find you guilty of theft.

Tr. p. 53. On November 15, 2011, the trial court held a sentencing hearing, where it sentenced Johnson to 545 days in the Department of Correction (DOC) with ninety days executed and 455 days on home detention. Johnson now appeals.

## DISCUSSION AND DECISION

Johnson's sole argument on appeal is that the evidence was insufficient to sustain his conviction for class D felony theft. Johnson's argument appears to be two-fold: Although the State charged Johnson with theft under Subsection (a) of the statute, the trial court actually convicted him of receiving stolen property under Subsection (b);

4

assuming the trial court convicted him of receiving stolen property, the State failed to prove that Johnson had knowledge that the property was stolen.

Upon a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Rather, we look to the evidence most favorable to the trial court's verdict and the reasonable inferences to be drawn therefrom. Brasher v. State, 746 N.E.2d 71, 72 (Ind. 2001). We will affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." McHenry, 820 N.E.2d at 126.

To convict Johnson of class D felony theft, the State had to prove that Johnson knowingly exerted unauthorized control over the property of Jennifer Boling with intent to deprive her of its value or use. Indiana Code § 35-43-4-2(a); Appellant's App. p. 17. Convictions for theft may be sustained on circumstantial evidence. Miller v. State, 563 N.E.2d 578, 581 (Ind. 1990). Additionally, we "need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but rather whether inferences may be reasonably drawn from that evidence which support the verdict beyond a reasonable doubt." Bustamonte v. State, 557 N.E.2d 1313, 1318 (Ind. 1990).

Moreover, our Supreme Court modified the "mere possession" rule, which held that the unexplained possession of stolen property, standing alone, was sufficient to support a conviction for theft. Fortson v. State, 919 N.E.2d 1136, 1143 (Ind. 2010).

Specifically, the <u>Fortson</u> Court instructed that possession should be considered with other evidence, such as how recently someone was found in possession of stolen property from the time the property was stolen and the circumstances surrounding the possession, such as whether the stolen property was found in the possession of someone in the immediate vicinity or many miles away. <u>Id.</u> "In essence, the fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational juror could find the defendant guilty beyond a reasonable doubt." <u>Id.</u>

In this case, sometime after 2:00 p.m. on December 7, 2010, the Bolings' residence was burglarized. Tr. p. 9, 14-15. The Bolings' neighbor, Laura Selm, observed the burglary, called the police, and notified the Bolings. <u>Id.</u> at 10-11, 15. Jennifer returned to her residence and observed that a front window had been broken, the front door was standing open, and the interior of the house was in disarray. <u>Id.</u> at 15-16. Additionally, Jennifer's engagement/wedding ring was missing along with a television, a Wii gaming system, Wii gaming controllers, Wii games, a laptop computer, a sixteen gigabyte iPod touch, an iPod Nano, a printer, 14 karat gold earrings, and a box of cigars. <u>Id.</u> at 16-17.

The next day, Jennifer went to Joseph's Pawn Shop on Illinois Street, which is located approximately four blocks from her home. Jennifer learned that her stolen engagement/wedding ring had been pawned the previous day. Tr. p. 18. Detective Donaldson went to Joseph's Pawn Shop to recover the ring and discovered that Johnson not only had pawned ring, but also several other items that had been stolen from the

Boling residence at three different times on December 7 – the same day that the Boling residence was burglarized. Id. at 29-38. Johnson showed up at Joseph's Pawn Shop for the first time on December 7 at 3:06 p.m. when he pawned Jennifer's sixteen gigabyte Apple Touch, four Wii games, laptop computer, and her fourteen karat gold earrings.

Detective Donaldson identified Johnson from his thumb print, which he was required to provide to pawn the items and was placed on the back of the pawn tickets. State's Ex. 1A-D, 2, 3. The thumb print on the pawn tickets was compared to a known sample of Johnson's fingerprints, which identified Johnson.

From this evidence, we can conclude that Johnson pawned property that had been stolen from the Boling residence less than one hour after the property had been stolen. Thus, Johnson had possession and control over Jennifer's stolen property within one hour of the theft. Additionally, Johnson went to a pawn shop only four blocks from the Boling residence to pawn the stolen property and returned twice throughout the day to pawn other items that had been stolen from the Boling residence. By looking at all the circumstances surrounding the possession as Fortson instructs, a rational factfinder could have found Johnson guilty of theft beyond a reasonable doubt.

Notwithstanding our conclusion above, Johnson argues that the trial court really intended to convict him of receiving stolen property and that the State failed to prove that he had knowledge that the property was stolen. As stated in the FACTS, at the conclusion of Johnson's bench trial, the trial court stated:

7

> Mr. Johnson, I'm convinced beyond a reasonable doubt that you're guilty of having property without authorization and with the intent to deprive the people who owned the property of its value or use. So I'm going to find you guilty of theft.

Tr. p. 53.

In light of the language used by the trial court, we cannot agree with Johnson's contention that it did not intend to convict of theft. Nevertheless, we address Johnson's related argument that "[n]othing was found that could place him in the house." Appellant's Br. p. 7.

> In Gibson v. State, our Supreme Court explained that
>
> If the State meets its burden of proof with respect to all the necessary elements of either the theft or receiving stolen property offense as alleged in the charging instrument, it is of no consequence whether the accused was the person who actually took the stolen property from its authorized possessor because, once this burden is met, the State has proved that the accused, whether actual thief or not, has done precisely what is forbidden by both subsection (a) and (b) – knowingly or intentionally exercising unlawful control over property of another with a purpose to deprive.

643 N.E.2d 885, 892 (Ind. 1994).

Although the evidence may not have proved that Johnson committed the burglary on the Bolings' residence or even that he was the initial thief, the evidence was sufficient such that a rational factfinder could conclude beyond a reasonable doubt that Johnson knowingly possessed the stolen property a short time after the burglary and exercised unauthorized control over it with the intent to deprive the owners of its value or use when he pawned it. Indeed, the fact that the pawn shop was only four blocks from the Bolings' residence and that Johnson pawned several of the stolen items less than one hour after the

8

burglary is sufficient evidence to sustain Johnson's conviction for theft even in the absence of evidence that he committed the burglary or was the initial thief. Accordingly, this argument fails, and we affirm the decision of the trial court.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.