## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2018, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jerry T. Drook
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aaron E. Keaton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 15, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-1256 <br><br> Appeal from the Grant Circuit Court <br><br> The Honorable Mark Spitzer, Judge <br><br> Trial Court Cause No. <br> 27C01-1612-F4-63 |

**Tavitas, Judge.**

## Case Summary

Aaron Keaton appeals his conviction for theft, a Level 6 felony. We affirm.

## Issue

Keaton states a single issue in his brief, which we restate as whether the evidence is sufficient to convict Keaton for theft.

## Facts

On September 2, 2016, Mike Harrison went on an overnight trip, leaving his home unattended. Harrison returned home on September 3, 2016, at approximately 7:00 p.m. When Harrison approached the back of his home, Harrison immediately noticed the back door was open. Harrison always closes and locks the back door when he leaves the house. Harrison walked toward the house and noticed damage to the door and papers scattered all over the floor. Harrison walked through the house to see the other damage before calling police.

Several cabinets and doors throughout the home were opened, and their contents removed. In surveying his home, Harrison saw that a jewelry box, which typically sat on a bedroom dresser, was disturbed. Specifically, Harrison noticed two bracelets from the jewelry box were missing. These bracelets were given to Harrison for years of service at General Motors. In total, Harrison owned six bracelets, but only two were missing that day. The two missing

bracelets were different than the other bracelets in that the missing bracelets contained diamonds.

[5]     When Harrison went into his garage, Harrison noticed bags were pulled out of their storage space and scattered across the floor, the door to his safe was open, and the drawers on his two file cabinets were also open. The safe door was closed, but not locked, when Harrison left for his trip. Harrison typically stored the following items in the safe: a pistol, personal paperwork, a coin purse, and a manila envelope, which contained two rings, two bracelets, and a necklace. These items were missing from the safe, and the safe was "totally empty." Tr. Vol. II p. 67. The necklaces and rings from the safe belonged to Harrison's late wife. Harrison and his wife had the rings custom-made at a local jewelry store.

[6]     Officer Joe Ryder of the Grant County Sheriff's Department responded to Harrison's call. Officer Ryder identified the damage to the door as consistent with his other burglary investigations in the past. Harrison walked through each room with Office Ryder, and Harrison reported the missing items and pointed out contents in the house that were different than how Harrison left them before his trip. Officer Ryder was able to locate a partial finger print on the safe. The lab later determined that the "partial latent print was not suitable for comparison." *Id.* at 89-90. The next day, another officer went to local pawn shops to determine if any items matching the description of Harrison's stolen items had been sold or pawned.

[7] Officers discovered that, on September 3, 2016, at approximately 12:15 p.m., Keaton brought two rings to the Trading Post Pawn Shop ("Trading Post") to sell. Brian Sills, the Trading Post owner, purchased the rings for a total of six hundred dollars. The video surveillance from the Trading Post showed Keaton selling the rings.

[8] A few days after September 3, 2016, Officer Ryder arrived at Harrison's home to show him photos of rings that matched the description of Harrison's rings. When Harrison first looked at the rings, he did not believe them to be his. Harrison was then taken to the Trading Post to look at the rings in person. When Harrison arrived and viewed the rings, Harrison recognized them immediately as belonging to his late wife.

[9] Officer Ryder questioned Keaton regarding the transaction. When Officer Ryder asked Keaton how he came into possession of the jewelry, Keaton told Officer Ryder that a friend gave Keaton the rings one week before the incident. Later, Keaton changed his story and told Officer Ryder that Keaton received the rings two weeks before the incident. Keaton refused to give Officer Ryder the name of the friend who allegedly gave him the rings.

[10] Harrison had previously met Keaton several times when Keaton stayed with one of Harrison's neighbors whom Harrison visited frequently. On one occasion, Keaton visited Harrison's property to help Harrison start a lawn mower. Keaton and Harrison worked on the lawn mower in Harrison's back yard.

[11] Keaton was subsequently charged with burglary, a Level 4 felony, and theft, a Level 6 felony. A jury found Keaton not guilty of burglary and guilty of theft. The trial court sentenced Keaton to two and one-half years executed at the Indiana Department of Correction.

## Analysis

[12] Keaton challenges the sufficiency of the evidence for his theft conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985)). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

[13] Keaton was charged with theft, a Level 6 felony, pursuant to Indiana Code Section 35-43-4-2. Under Indiana Code Section 35-43-4-2, the State must prove that Keaton "knowingly or intentionally exert[ed] unauthorized control over

property of another person, with intent to deprive the other person of any part of its value or use. . . ." Relevant here, the theft was a Level 6 felony as "the value of the property [was] at least seven hundred fifty dollars ($750) and less than fifty thousand dollars ($50,000)." *See* Ind. Code § 35-43-4-2(a)(1)(A). The State proved the value of the rings to be a combined total of at least $750 through Sills' testimony that Sills paid $600 for both rings, which was the "wholesale" price. Tr. Vol. II p. 101. Sills testified that the wholesale price will be "ten to fifteen percent" of the retail price. *Id.* at 114.

[14]     "'Knowledge that property is stolen may be inferred from the circumstances surrounding the possession.'" *Purifoy v. State,* 821 N.E.2d 409, 414 (Ind. Ct. App. 2005) (quoting *Bennett v. State,* 787 N.E.2d 938, 946 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied.* "The test of knowledge is not whether a reasonable person would have known that the property had been the subject of theft but whether, from the circumstances surrounding the possession of the property, the defendant knew that it had been the subject of theft." *Purifoy,* 821 N.E.2d at 414 (citing *Gibson v. State,* 643 N.E.2d 885, 891 (Ind. 1994)). "Possession of recently stolen property when joined with attempts at concealment, evasive or false statements, or an unusual manner of acquisition may be sufficient evidence of knowledge the property was stolen." *Id.* (citing *Gibson,* 643 N.E.2d at 891). Our supreme court has held:

> [T]he mere unexplained possession of recently stolen property
> standing alone does not automatically support a conviction for
> theft. Rather, such possession is to be considered along with the
> other evidence in a case, such as how recent or distant in time

was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away). In essence, the fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational juror could find the defendant guilty beyond a reasonable doubt.

*Fortson v. State,* 919 N.E.2d 1136, 1143 (Ind. 2010) (citing *Barnett v. State,* 834 N.E.2d 169, 172) (Ind. Ct. App. 2005)).

[15] There is no dispute that Keaton was the person who sold Harrison's jewelry. Similarly, Keaton did not appear to dispute that the property was stolen from Harrison's home. Instead, Keaton's argument seems to center around whether there was evidence Keaton knew the rings were stolen. Keaton told Officer Ryder that he received the jewelry from a friend. The first time Keaton told Officer Ryder his version of the facts, Keaton indicated that he received the rings from his friend one week before Keaton sold them. Later, Keaton told Officer Ryder he received the rings two weeks before Keaton sold them. Keaton refused to identify the friend to Officer Ryder. Harrison took his trip on September 2, and Keaton sold the items on September 3.

[16] Keaton's account of the source of the rings was inconsistent and vague. Keaton's responses to Officer Ryder were evasive, and Keaton stated he received the rings one week prior and then changed his story and stated he received the rings two weeks prior to September 3rd. Both time frames were impossible and false. There was also evidence presented that Keaton was familiar with Harrison's neighborhood. Keaton was familiar with the back of

Harrison's house, and Keaton previously spent some time in the back yard with Harrison on at least one occasion. This circumstantial evidence was sufficient to lead a jury to conclude that Keaton knowingly exerted unauthorized control over Harrison's property, with the intent to deprive Harrison of its value or use. To the extent Keaton invites us to reweigh the evidence to reach a different conclusion, we decline to do so. The surrounding facts and circumstantial evidence demonstrate more than just possession of recently stolen property, and a reasonable jury could have found Keaton guilty of theft beyond a reasonable doubt.

## Conclusion

[17] The evidence is sufficient to convict Keaton of theft, a Level 6 felony. Accordingly, we affirm.

[18] Affirmed.

Brown, J., and Altice, J., concur.